No. 22,978.

THE STATE OF KANSAS, *Appellee,* v. MILDRED RIDGWAY, *Appellant.*

SYLLABUS BY THE COURT.

1. LARCENY—*Evidence Tending to Show Commission of Other Similar Larcenies Competent.* Under the circumstances stated in the opinion, evidence relating to the subject of commission of other larcenies by the defendant was properly admitted at her trial on the charge of grand larceny.

2. SAME—*Trial—No Substantial Error.* Minor assignments of error considered, and held to be without substantial merit.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed April 9, 1921. Affirmed.

*W. S. Hyatt,* and *Carl V. Rice,* both of Parsons, for the appellant.

*Richard J. Hopkins,* attorney-general, and *C. J. Taylor,* county attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The defendant was convicted of grand larceny, and appeals.

The defendant is a married woman, whose profession is that of nursing. In November, 1919, she was called to take care of Mrs. Clara Bugg, who died a few days later of an infectious disease. The house was under quarantine, and the defendant remained in general charge of it until after the funeral. After she left, numerous articles of personal property and some money were missing. The defendant's home was searched under a search warrant, and many of the missing articles were found there. According to testimony of witnesses for the state, the defendant, at the time of the search, made statements and exhibited conduct strongly indicative of guilt, and she was arrested and placed on trial for larceny of property described in the information as follows:

"Two towels of the value of $1.50; two knit ends for scarf of the value of $10.00; one corset cover of the value of $3.00; one towel of the value of 75c; one gown of the value of $3.00; one skirt of the value of $12.00; one pair of hose of the value of $2.50; one underskirt of the value of $4.00; one combing jacket of the value of $3.00; seven yards of silk muslin of the value of $21.00; one towel of the value of $2.00; one dressing jacket of the value of $1.00; one clothespin apron of the value of 50c; one collar of the value of 75c; one towel of the value of 50c; six napkins of the value of $4.00; one pair of pillow cases of the value of $4.00; one table cloth of the value of $5.00; five handkerchiefs of the value of $2.50; one square cut-glass pickle dish of the value of $5.50; one cut-glass cream pitcher and sugar bowl of the value of $7.50; one plain gold band ring of the value of $10.00; one turquoise ring of the value of $6.50; one pearl-set pin of the value of $6.00; and $10.00 in money."

In order to negative innocent possession, the state, as a part of its case in chief, produced several witnesses who testified, over objection, that the defendant had nursed in their homes, and after she left, articles of personal property were gone which were there when she came. These disappearances occurred within a period of two years previous to the defendant's

employment at the Bugg home. Lists of the missing articles follow:

From the Woods home: A gold ring, a sweet-grass basket, a writing pad and fountain pen, part of a box of stationery, an enameled vase, and a Red Cross pin.

From the Orr home: A small pair of scissors, a knife, a vase, a pair of ——— clothes, some stationery, a fudge apron, and a linen apron.

From the Coon home: Five yards of muslin, two pairs of men's silk hose, five linen handkerchiefs, several ladies' handkerchiefs, a teddy-bear suit with a crocheted yoke, a nightgown, a sheet, a cap, a wedding book, a record book, a silver thimble, and a stick pin.

From the Harlow home: A camisole, and about $25 house money kept in a purse on a desk in Mrs. Harlow's bedroom.

One of the witnesses testified that after the defendant had nursed at the Woods home, the witness, with several other women, went to the defendant's home. The door was open, and a sweet-grass basket the same as the one missing from the Woods home was seen standing on a table. The defendant invited her visitors in, but, going ahead of them, put the sweet-grass basket in a writing desk and closed the desk.

The court instructed the jury as follows:

"11. Certain of the witnesses who have testified in this case have been permitted to detail to you the facts surrounding other similar offenses as that charged against the defendant in this case, and you are instructed that evidence concerning the commission of other similar offenses by the defendant is competent and proper in this case, and may be considered by you in this case for the purpose of determining the scienter or intent of the defendant at the time of taking and carrying away of the property alleged to have been stolen, if any property was taken and carried away by her, and must not be considered by you for any other purpose whatever in this case."

The question raised by objection to the evidence recited and by the instruction, is the old but forever new one of admissibility of other offenses or similar acts to prove an element of the crime for which a defendant is on trial. The general rule, the reasons for it, the exceptions to the general rule, and the reasons for them, have been stated so often, it is not necessary to do so again. The subject is thoroughly discussed in 1 Wigmore on Evidence, §§ 300-367. Cases are collated in 62 L. R. A. 193 and 43 L. R. A., n. s., 776.

. The danger in admitting evidence of the kind under consideration lies in the fact that the jury might resolve doubt against the defendant, and find him guilty, because he had been

delinquent before—an irrelevant matter; but if previous crime or conduct have a natural and logical tendency to establish the crime, or an element of the crime, for which the defendant is on trial, the evidence is admissible and ought to be admitted, as this court has many times held. In this instance the relation of the evidence to the intent ingredient of the crime charged is only fairly close. Mere remoteness, however, affects weight rather than admissibility, and the question is, Did the evidence tend to prove guilty possession?

The evidence for the state was that on five different occasions articles were gone without permission to take them, when the defendant left homes in which she had been employed to nurse. The articles readily fall into groups, showing appeal to the same taste and desire, and they are all of a kind to which the defendant had peculiar means of access. Articles of feminine apparel appear in all the lists but one, and in that one is an article which the defendant hurried to hide when she thought it was about to be seen in her possession. Marked peculiarities of these incidents are too common, too similar, and too constant, to be dissociated. The concurrences are too numerous to permit of reasonable explanation on the theory that missing articles were simply misplaced, or were carried off through inadvertence or mistake. Unauthorized disappearance of personal effects was too uniformly a feature of employment of the defendant as a nurse in the home, to make theft by others a coincidence. Goods missing from the Bugg home after the defendant finished her service there were actually found in her possession, and repetitions of similar losses under similar circumstances were quite convincing that possession of the Bugg property was accompanied by wrongful intent.

The defendant says that by the instruction quoted the court told the jury the evidence proved other offenses of which the defendant was guilty. There was evidence of other larcenies, and there was very persuasive evidence the defendant was guilty of at least one of them; but the instruction is not open to the objection urged. In order to avoid circumlocution, the court used the expression "other similar offenses"; but the qualifying expressions, "the facts surrounding" and "evidence concerning commission," made it clear the court was describing, and not characterizing.

There is nothing else of importance in the appeal. A motion for continuance was properly denied. The evidence proved larceny, and not embezzlement. There was sufficient competent evidence to establish the necessary elements of grand larceny. Failure to give an instruction concerning petit larceny did not constitute error. Misconduct of a juror was not definitely established.

The judgment of the district court is affirmed.

JOHNSTON, C. J., and MARSHALL, J., dissent from the first paragraph of the syllabus and the corresponding portions of the opinion.