The State v. Wahl.

No. 26,067.

THE STATE OF KANSAS, *Appellee,* v. JOHN F. WAHL, *Appellant.*

SYLLABUS BY THE COURT.

1. INDICTMENT AND INFORMATION—*Sufficiency—Following Language of Statute.* An information charging an offense in the language of the statute is sufficient where the statute itself states the elements constituting the offense.

2. SAME—*Variance as to Names—Materiality.* It was charged that the defendant forged and uttered a check to which the name of Bruce Linniger was signed, and the name on the check when produced in evidence, not plainly written, appeared to be spelled as Bruce Linmiger. It is held that the names are so much alike in form and sound that the variance was not fatal and the check was admissible in evidence.

3. SAME—*Variance as to Names—When Material.* A variance to be material must be such as to have misled the defendant to his prejudice in preparing and making his defense.

4. FORGERY—*Evidence—Admissibility.* Evidence that the defendant had negotiated another check about the same time, purporting to have been signed by Bruce Linniger, which the latter testified he did not sign or authorize the defendant to sign, where the application of the evidence was limited by the court to the knowledge and intent of the defendant, was not improperly admitted.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion filed June 6, 1925. Affirmed.

*Z. C. Millikin,* of Salina, and *George D. Bischoff,* of Abilene, for the appellant.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, and *Bryan J. Hoffman,* county attorney, for the appellee; *Ralph Knittle,* of Salina, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: John F. Wahl was convicted of forging and uttering a bank check and has appealed from the judgment.

The charge was made in two counts of the information, the first alleging the forgery of the check, which is as follows:

"HOPE, KANS., July 5. No. 1924.

THE FIRST NATIONAL BANK   10

Pay to John Driscoll or order $25.75

Twenty five & 75/100......Dollars

For                                                      BRUCE LINNIGER."

Member Federal Reserve Bank.

And this was followed by an averment that it was signed "with intent then and there and thereby feloniously to injure and defraud; contrary to the statute in such cases made and provided and against the peace and dignity of the state of Kansas."

In the second count, relating to the passing and uttering of the check, it was alleged that it was uttered and published as true "to one John Driscoll, with intent, him, the said John Driscoll then and there and thereby to injure and defraud, he, the said John F. Wahl, then and there well knowing said check to be false, forged and counterfeit," etc.

It is contended that the first count of the information was defective in that it did not allege the name of the person intended to be defrauded by the forging of the check. The language used in the information is in the language of the statute relating to the forging of an instrument, and it is a general rule that it is sufficient to allege such an offense in an information in the words of the statute, especially where the statute itself names the elements constituting the offense. (*The State v. Foster,* 30 Kan. 365, 2 Pac. 628; *The State v. McGaffin,* 36 Kan. 315, 13 Pac. 560; *Arkansas City v. Roberts,* 89 Kan. 680, 132 Pac. 152; *The State v. Curtis,* 108 Kan. 537, 196 Pac. 445.)

It is contended that the check introduced in evidence was not the one described in the information and that the court erred in receiving it. The allegation was that the name of Bruce Linniger was signed to the check, but that the name on the check, which was not plainly written, appeared to be spelled Bruce Linmiger.

There is a marked sameness in the orthography and form of Linniger and Linmiger, as the strokes of the pen in forming "i," "n" and "m," as ordinarily written, would make the names look much alike, and the signature of Bruce Linniger was so well counterfeited that the bank on which the check was drawn accepted and cashed it as the check of Bruce Linniger. How much they sounded alike when pronounced is not definitely shown, but there was testimony that three persons saw the defendant sign the name, and that he called himself Bruce Linniger. The general rule is that names sounding alike are *idem sonans,* and it is not necessary that they should be spelled alike if the pronunciation is substantially the same. (*Armstead v. Jones,* 71 Kan. 142, 80 Pac. 56.) That rule, it is said, may be brought into requisition where the duty devolves on the eye instead of the ear to distinguish the names. (*Kelly v. Kuhnhausen,*

51 Wash. 193.)   Names are used to designate the persons intended, and that purpose is accomplished when the name given has sub-stantially the same sound as the true name.   (19 R. C. L. 1334.) Even slight differences in the pronunciation is unimportant.   (29 Cyc. 274.)   It has been said that:

"The doctrine of *idem sonans* has been much enlarged by modern decisions to conform to the growing rule that a variance, to be material, must be such a one as has misled the opposite party to his prejudice." (*State v. White,* 34 S. C. 59, quoting *Schooler v. Asherst,* 11 Ky. 216.)

Continuing, the court said:

"It seems to us, therefore, that without referring to the numerous cases in the books, where slight variations in orthography have sometimes been held fatal and sometimes not, without reference to any definite rule, it would be better to follow the rule which may be deduced from the more modern de-cisions to this effect, that where the name as written in the indictment may be pronounced (although such may not be the strictly correct pronunciation) in the same way as the name given in the evidence, the variance will not be regarded as fatal, unless the variant orthography be such as would be likely to mislead the defendant in preparing his defense." (pp. 59, 61.)

In the case of *The People v. Weisman,* 296 Ill. 156, the court said:

"The modern rule is that a variance as to the names alleged in an indict-ment and proved by the evidence is not to be regarded as material unless it shall be made to appear to the court that the jury were misled by it or that some substantial injury was done to the accused thereby, such as that by reason thereof he was unable to intelligently make his defense or was ex-posed to the danger of a second trial on the same charge." (p. 162.)

The variance could not have misled the defendant, as it was shown that he was the identical person who signed the name, and at that time represented himself to be the Bruce Linniger who lived in the neighborhood.   Defendant testified that he bought the tire for $8.50 from a stranger who was on the road in an old Ford and looked like a man peddling around old tires.   It appears to be one of the frequent transactions of dealing with an undiscoverable stranger.   No prejudicial error was committed in the admission of the check.

There is a complaint of the admission in evidence of another Linniger check negotiated by the defendant a few days after the forgery of the check in question.   A merchant in Herington testified that the defendant came to his store and purchased some merchan-dise, for which he gave a check for $20, purporting to have been signed by Bruce Linniger, made in favor of a man named Johnson.

On turning it over the merchant found that the check had already been indorsed, and he accepted it. The merchant presented it to a bank, which refused to honor it. Bruce Linniger testified that he did not sign the check nor authorize the defendant to sign his name to it. It is said that Linniger did not testify that he had not authorized some one else to sign the check, but we think that the evidence sufficiently tended to show that the instrument was false and that the defendant was passing it with knowledge that it was not genuine. The testimony went to the methods, knowledge and intent of the defendant. The application of this evidence to the offense charged was limited by the court, as it advised the jury that it would be received for the sole purpose of showing knowledge and intent on the part of the defendant, and should not be considered for any other purpose. The evidence did tend to show that the defendant was dealing in Linniger checks which Linniger had not signed, and which were counterfeits. The fact that the testimony may have tended to show the commission of another offense does not make it inadmissible if it throws light upon defendant's guilt of the offense charged. The exceptions to the rule that guilt of one offense cannot be established by proof that the accused had committed another offense have been fully considered and discussed in former decisions. (*The State v. Briggs,* 74 Kan. 377, 86 Pac. 447; *The State v. Ridgway,* 108 Kan. 734, 197 Pac. 199; *The State v. King,* 111 Kan. 140, 206 Pac. 883; *The State v. Bartholomew,* 116 Kan. 590, 228 Pac. 366.)

Under these rulings the admission of the testimony was not error. The judgment is affirmed.