No. 29,703.

THE STATE OF KANSAS, *Appellee,* v. ALLEN FRIZZELL, *Appellant.*

(295 Pac. 658.)

Opinion filed February 7, 1931.

*Thomas E. Wagstaff* and *Jay W. Scovel,* both of Independence, for the appellant.

*Roland Boynton,* attorney-general, *R. O. Mason,* assistant attorney-general, and *Bert E. Church,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from a conviction and sentence of and for bank robbery and robbery in the first degree which involves only the question of the admission of evidence concerning other similar offenses and instructions concerning such evidence.

The defendant was charged and convicted of robbing the Corbin State Bank in Sumner county on January .6, 1930. Evidence was introduced by the state in chief concerning the defendant being one of the two men who robbed the Hiattville bank at Hiattville, Bourbon county, on December 23, 1929, just two weeks before the robbery of the Corbin bank. The president of the Hiattville bank identified the defendant as being one of the two, described their movements, their clothing, their size, what they said and did in effecting the robbery and said that it occurred about 1:30 or 1:40 o'clock in the afternoon. Appropriate objections were made to this testimony and overruled. Later an instruction was requested concerning the same and refused, but the court gave an instruction along the same line.

The evidence concerning the Corbin robbery includes a description of the associate of the defendant and his movements and conduct. He is referred to in the testimony as one Holliday, and the cashier of the Corbin bank, in modifying his description of Holliday from what he had given of him at the preliminary hearing, testified that he had seen Holliday since the hearing and in that way had a better opportunity to know his size, and that his last description was therefore more nearly accurate than that given at the preliminary hearing. He was then asked when and where he saw him, and the surrounding conditions and circumstances which involved

another bank robbery and a murder with which Holliday was said to have been connected but the defendant was not. Appropriate objections were made to this testimony and overruled, which is assigned as error.

We will first consider the question of the admissibility of the evidence concerning the robbery of the Hiattville bank. The objection to it was that it was a separate and distinct crime, isolated, unrelated and not connected with the crime charged in the information, and prejudicial to the rights of the defendant.

Appellant claims the protection of the well-recognized general rule in his favor, excluding all evidence of other offenses, but is fair enough to acknowledge the existence of many exceptions to that rule, and insists that this case does not come within the line of the exceptions. He cites decisions from this and other courts adhering to the general rule and deprecating the growing tendency to enlarge and extend the list of exceptions. This evidence as to the Hiattville bank robbery was fairly approached by the county attorney by his reference to it in his opening statement to the jury, to which an objection was made, but that opening statement prevented the defendant from being surprised, and no request for further continuance of the case beyond what was given was made because of the use of that evidence. It is usually urged by the appellants in such cases that the effect of such evidence is to convince the jury of the defendant's guilt of the similar offense and thus make it more probable to the jury that he committed the crime charged, but this is far from the purpose when it comes within the recognized list of exceptions to the general rule, and it is the all-important duty of the trial court to guard and limit the introduction of the items and features of such similar offenses and permit them to go only to the point recognized as one of the exceptions and to so plainly instruct the jury to prevent such evidence from being used for any other purpose.

The reason for the exceptions to the rule against such evidence being admissible is well stated in 16 C. J. 591, as follows:

"Where the crime charged is part of a plan or system of criminal action, evidence of other crimes near to it in time and of similar character is relevant and admissible to show the knowledge and intent of the accused and that the act charged was not the result of accident or inadvertence."

Wharton's Criminal Evidence (vol. 1, 10th ed.), page 59, after stating the rule, notes nine exceptions thereto, among which are,

relevancy to prove identity of person or crime, to prove *scienter* or guilty knowledge, to prove intent, to show motive, to prove system, to prove malice and to rebut special defenses, and then adds:

"It is recognized that in many instances the line of demarcation is not clear, but the discretion vested in the trial judge, intelligently and considerately exercised, will enable the prosecution fully to present the charge, on the one hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the constitution and the laws." (p. 60.)

Two and possibly three of the above exceptions might be urged as applicable to the collateral offense here involved, to prove identity of person and crime, to prove system and to rebut the special defense. The evidence tended to show identity of person, identity of crime, similar system or methods near the same time of the day, and was made more urgently necessary in order to rebut the defense of alibi. Remembering that there could be no question as to the fact that the bank at Corbin had been robbed, the only question left was whether it was done by the defendant. That situation made the matter of identity of person the principal issue of fact in the case. On that question it is said under this subject in 16 C. J. 588:

"It has been said that evidence of other crimes committed by the accused is relevant to prove his identity; but it is more correct to say that, where the commission of a crime is proved, evidence to identify accused as the person who committed it is not to be excluded solely because it proves or tends to prove that he was guilty of another and independent crime. However, to bring evidence within this exception, there must be some connection between the two offenses; and where the identity of accused is not in issue, evidence is inadmissible to show that, under another name, he had previously committed another and a distinct crime."

In the case of *State v. Minnick,* 113 Kan. 385, 214 Pac. 111, it was held:

"In the prosecution for receiving stolen goods it is held that no error was committed in admitting evidence of the defendant's possession of other goods stolen at about the same time and received by him from the same person." (Syl. ¶ 2.)

And in the opinion it was said:

"If it was admissible it was in spite of its tendency to show him guilty of another offense and not because of it." (p. 387.)

In the case of *State v. Mall,* 112 Kan. 63, 209 Pac. 820, where the defendant was charged with the crime of grand larceny, the court admitted evidence touching a large amount of goods seized in defendant's room other than the articles for the larceny of which she was on trial, and it was held:

"Such evidence was competent as tending to show that the goods for whose theft she was on trial were taken pursuant to a system of thieving pursued by the defendant." (Syl. ¶ 4.)

In a similar case of larceny evidence of missing goods at other homes after the defendant left was held admissible in the following discriminating and logical language:

"The danger in admitting evidence of the kind under consideration lies in the fact that the jury might resolve doubt against the defendant, and find him guilty, because he had been delinquent before—an irrelevant matter; but if the previous crime or conduct have a natural and logical tendency to establish the crime, or an element of the crime for which the defendant is on trial, the evidence is admissible and ought to be admitted, as this court has many times held. In this instance the relation of the evidence to the intent ingredient of the crime charged is only fairly close. Mere remoteness, however, affects weight rather than admissibility, and the question is, Did the evidence tend to prove guilty possession?" (*State v. Ridgway,* 108 Kan. 734, 736, 197 Pac. 199.)

In another more recent grand larceny case the court said:

"On the trial of a criminal action, evidence of the commission of other similar offenses may be introduced to prove a system of criminal acts." (*State v. Collins,* 126 Kan. 17, syl. ¶ 2, 266 Pac. 937.)

In another case in the same volume the court held:

"In the prosecution for larceny of domestic fowls the court may, in its discretion, permit evidence of similar transactions for the purpose of proving identity of accused, to show his motive, intent, *scienter,* lack of mistake, or his plan or system of operation." (*State v. Reuter,* 126 Kan. 565, syl. ¶ 2, 268 Pac. 845.)

In the murder case of *State v. King,* 111 Kan. 140, 206 Pac. 883, evidence of the facts in connection with two other murders than that for which the defendant was on trial was held to have been admissible "for their probative force in ascertaining the identity of the slayer in the case on trial."

It would serve no good purpose to continue this reference to decisions in recognition of the exceptional purposes as to showing identity of person or crime, intent, system or plan. The exceptions extend to sex cases showing lustful tendencies, to embezzlement cases showing intent and system, to forgery, and arson cases showing plan and motive, and to any or all of them showing identity of person or crime.

We conclude that following the long line of specific precedents and without any inclination or intention to extend the already too liberal list of exceptions along these lines, the evidence in this case

as to the Hiattville robbery was competent and admissible under proper instructions.

It has been said these exceptions are founded on as much wisdom and justice as the rule itself and that the rule should be strictly enforced and should not be departed from except under conditions which clearly justify such a departure.

Appellant complains of the refusal of the trial court to give the instruction he requested on this subject. The requested instruction correctly stated the law, as far as it went, but it limited such evidence to the one purpose of identity of person. The instruction given by the court covered that point but included the purposes of intent, lack of mistake, motive and system. There was apparently very little of the evidence showing motive or intent, but since the instruction covered entirely the point requested, we find no error.

The error assigned by the appellant as to the admission of testimony by the state as to Holliday being connected with another bank robbery and a murder presents a more serious matter. It was brought out on redirect examination of Mr. Hoppes, cashier of the Corbin State Bank, when the county attorney gave him an opportunity to explain why his present description of Holliday was slightly different as to height from that given by him on the preliminary hearing, and he explained he had seen him since that time, which was perfectly right and proper to that extent. Holliday was shown by the state's testimony to have been associated with the defendant in the Corbin bank robbery. The following, omitting the objections and rulings, is the evidence in this connection the admission of which is assigned as erroneous:

"Q. Have you seen this man Holliday since your bank robbery? A. I have.

"Q. And this man Walker? A. Yes.

"Q. Where did you see them? A. At Johnson, Kan.

"Q. Where were they at that time? A. They were in jail at Johnson, Kan.

"Q. Do you know what they were being held there for? A. I do.

"Q. State what that was.

"MR. WAGSTAFF: Are you testifying to what somebody told you or what you read in the papers? A. I presume so.

"Q. Did they tell you what they were in there for? A. They did.

"Q. Will ask you to state what they were being held there for. A. For several—at least two charges; one was robbery of the Manter bank, and the other for killing a sheriff in Colorado.

"Q. When was it that you saw these men at Johnson? A. I don't remember the date, but it was just the Sunday after the Manter bank robbery.

"Q. How long after your robbery? A. It was some time, probably two

months or two and half months, I don't know just exactly. It was the time the Manter bank was robbed.

"Q. Did you observe Andrew Holliday there at that time as to his height and build? I am speaking about at Johnson, Kan. A. Yes, I did.

"Q. Are those two men there that you saw, Andrew Holliday and John Walker, the other two men who helped rob the Corbin bank? A. I can only answer that as to one—Holliday.

"Q. You didn't get a full look at the man in the car? A. I didn't see him at all.

"Q. Was the man, Andrew Holliday, at Johnson, Kan., one of the two men in the bank at the time you were robbed? A. Yes.

"Q. Did you observe his height after your testimony at the preliminary hearing here? A. I did.

"Q. Was that before or after this preliminary hearing here? A. It was after."

One of the objections interposed by appellant to part of the evidence was that it was hearsay. The part about the Manter bank robbery and the killing of the deputy sheriff in Colorado were so nearly matters of general, public and common interest as to take them out of the hearsay class. (10 R. C. L. 962.)

Objections were made to the competency, relevancy and materiality of this testimony and overruled. Motions to strike it out were also overruled.

The precedents cited and reasons given in the earlier part of this opinion in sustaining the admissibility of the evidence concerning the Hiattville similar offense for the purpose of showing identity of person and crime, plan and system, are conclusive to the contrary when applied to other offenses with which it is not even claimed the defendant had connection. The fact that Holliday, the associate or other party in the Corbin bank robbery, may have been connected with these other crimes affords no justification whatever for bringing these matters to the attention of the jury. Holliday was not on trial. His offenses, however numerous or heinous, should not in any way be charged to this defendant. It could have no other effect than to cloud the sky and prejudice the defendant's case. The original intention to let the cashier explain his change of description of Holliday was eminently proper, but where he saw Holliday and under what circumstances and surroundings served no purpose whatever except to prejudice the defendant. The order of the questions and answers impresses the reader that the damaging part of this testimony was an afterthought and not at first intended, but it got to the jury, and we know of no justification or satisfactory

excuse for its being admitted, as it was irrelevant and immaterial and of necessity decidedly prejudicial.

We hold the admission of the evidence of Holliday being connected with the Manter bank robbery and the murder of the deputy sheriff of Colorado was erroneous and prejudicial and on that account the motion for a new trial should have been granted.

The judgment is reversed and the cause is remanded with instructions to sustain the motion for a new trial.