No. 32,017

THE STATE OF KANSAS, *Appellee,* v. CHARLES GWYNNE, *Appellant.*

(45 P. 2d 849)

Opinion filed June 8, 1935.

*Harry B. Davis,* of Anthony, and *H. E. Walter,* of Kingman, for the appellant.

*Clarence V. Beck,* attorney general, *Earl B. Swarner,* assistant attorney general, *Guy Neal,* county attorney, and *E. C. Wilcox,* special counsel, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Charles Gwynne was convicted of bank robbery. He has appealed, and contends the trial court erred: (1) In overruling his motion to quash the information; (2) in ruling upon the admission of evidence; (3) in giving certain instructions; and (4) in overruling his motion for a new trial. It also is argued the verdict is not sustained by the law and the evidence.

The information, omitting formal opening and closing, reads:

". . . that on the 7th day of August, 1930, at the county of Harper, in the state of Kansas, Charles Gwynne did then and there unlawfully, willfully and feloniously enter the premises of the Corwin State Bank of Corwin, Kansas, a corporation organized and existing under the laws of the state of Kansas, with the intent to hold up and rob said bank, and did then and there unlawfully, willfully and feloniously hold up and rob said bank, with the use of firearms, of lawful money of the United States of America, in the sum of $1,005 contrary . . ."

The motion to quash was on the ground that it "is insufficient to charge the defendant with the violation of any of the laws of the state of Kansas or the commission of any crime whatsoever."

The statute (R. S. 21-531), on which the prosecution was based, reads:

"That if any person shall enter or attempt to enter the premises of a bank or trust company or any banking association, with intent to hold up or rob any bank or trust company or banking association, or any person or persons therein, or thought to be therein, of any money or currency or silver or gold, or nickels or pennies or of anything of value belonging to or in the custody of said bank or trust company or banking association, or from any person or persons therein; or shall intimidate, injure, wound or maim any person therein with intent to commit such holdup or 'stick-up' or robbery, he shall, upon conviction thereof, be sentenced to be imprisoned in the penitentiary at hard labor for a term of not less than ten years nor more than fifty years."

Appellant argues the information did not specifically describe what was intended to be taken in the robbery, or what was so taken, as "money or currency or silver or gold, or nickels or pennies." It was described as "lawful money of the United States of America, in the sum of $1,005." This was sufficient, especially since there was no controversy in the case as to kind of money defendant intended to and did take. It also is argued there is no allegation that the money taken belonged to or was in the custody of the bank. It is alleged defendant did "hold up and rob said bank." It would be difficult to rob the bank of something it did not own or have in its custody. That is the necessary meaning of the language used. There is no intimation defendant was prejudiced in any way by the language used instead of using the exact words of the statute. Appellant also argues the information was bad for duplicity. This point was not raised in the motion to quash. It is true that entering the bank with the intent of robbing it is an offense, under the statute, although the robbery is not accomplished. (*State v. Dietrich,* 117 Kan. 105, 230 Pac. 329.) It is also an offense, under the statute, to rob a bank, without regard to the intent the robber had when he entered the bank. We never have heard of its being held, however, that entering a bank with the intent of robbing it and carrying out that intent by robbing the bank, does not constitute an offense, and that is the only point raised by the motion to quash. The point is not well taken. Had defendant raised the point of duplicity perhaps the prosecutor could and would have filed the information in two counts—one entering with the intent to rob the bank and the other

robbing the bank. Perhaps the likelihood this would be done prompted defendant not to raise the question in the trial court. At any rate he did not raise the question there; hence, it is not available to him here.

Appellant's objections as to evidence received and instructions given relate to this: The Corwin bank was robbed August 7, 1930. Corwin is in Harper county, Kansas, and but a few miles from the south line of the state. On September 3, 1930, the Burlington State Bank of Burlington, in Cherokee county, Oklahoma, was robbed. Cherokee county, Oklahoma, joins Harper county, Kansas, on the south. The towns of Corwin and Burlington are about twenty-five miles apart. This appellant and one Roscoe Feebeck were charged with and convicted of the robbery of the Burlington bank. Evidence pertaining to the robbery of the Burlington bank, appellant's connection therewith and his conviction thereof, was received on the trial of this case. In its instructions the court told the jury the limited purpose for which such evidence was received, and that it should be considered for no other purpose. All of this is in harmony with well-established rules of law in this state, as shown by our former decisions. There was no error in this respect. (See *State v. King*, 111 Kan. 140, 206 Pac. 883; *State v. Robinson*, 125 Kan. 365, 368, 263 Pac. 1081; *State v. Frizzell*, 132 Kan. 261, 295 Pac. 698; 137 Kan. 35, 19 P. 2d 694; *State v. Caton*, 134 Kan. 128, 4 P. 2d 677.)

The evidence tending to support the verdict may be summarized as follows: Corwin is a small town in a farming community about twenty miles west and south of Anthony, the county seat. The bank is located on the southeast corner of the intersection of the two principal streets of the town. It faces west. The main door is at the northwest corner of the building. There are two large windows on the north and a passageway leading from the front lobby along the north side of the main room to a directors' room in the rear, and from this there is a door which opens north to the street. This door was open, but the screen door was latched on the inside. Inside the main room is the customary partition, with tellers' windows, back of which are the fixtures for the bank employees, and to the rear of that space is the bank vault. On the morning of August 7, 1930, A. L. Anderson, cashier, was the sole employee of the bank present. A Mrs. Wallace, who lived on a farm near Corwin, was in the bank to have some papers filled out. She was standing in

the bank lobby near the cashier's window. Anderson was inside the railing filling out the blank on a typewriter. It was shortly after ten o'clock. A car drove up from the east and stopped at the north door of the directors' room of the bank. Two men were in the car. One of them remained in the car; the engine was kept running. The other one got out of the car and tried to open the screen door. Being unable to do so he walked west to the main door of the bank at the northwest corner of the building. As he did so he passed the two north windows. Both Anderson and Mrs. Wallace saw him, but paid little attention to him except to notice that he was dressed in unionalls and was wearing a cap. They went on with their work. He stepped in the main door of the bank, and at that time had tied across his face, so as to conceal all of it below his eyes, a large red handkerchief. He pointed a large pistol at Anderson, commanded that he throw up his hands, and proceeded to rob the bank. Anderson handed him what money was in the till, $1,005. He commanded both Anderson and Mrs. Wallace to keep their eyes down and to enter the vault, which they did. The door was closed. He then left the bank by the north door through the directors' room, immediately got into the car, which was driven rapidly west to the intersection, then north, and out of town.

Anderson and Mrs. Wallace were in the vault but a few minutes, and on getting out gave the alarm. Several persons in the small town saw the car as it drove up, as it was standing by the bank, or as it went out of town, but were unable to recognize the men in it. They noticed that the car was a 1930 model A Ford, black, or nearly so, with a small white line around it, and that it had a Texas license tag; also, that it had a noticeable dent, perhaps four inches long and two inches or more wide, in the body of the car above the rear window. Defendant owned such a car; in fact, he owned the only car of that model known in that neighborhood having such a dent. The defendant lived on a farm in Cherokee county, Oklahoma, about four miles west and six miles south of Corwin. After it left the bank the car was seen traveling toward defendant's place at about fifty miles per hour, which was fast, considering the road it was on. A number of persons had seen defendant drive the car at different places in the neighborhood and at the small towns near by, but always, until that day and after that day, with an Oklahoma license tag.

On the day before the Corwin bank was robbed the sheriff of

Cherokee county, Oklahoma, had received requests from other peace officers to look over defendant's premises to see who was staying there, the suspicion being that his place was a hideout for bank robbers, hold-up men, and the like. On getting this word the sheriff went to the defendant's place near midnight. He found no one at home, but in the yard was an old Dodge automobile with a Texas license tag on it. He took the number of this tag, later checked it up, and found it had been issued in Texas to Roscoe Feebeck. On the day of the robbery he and other peace officers were notified immediately, and he went directly to defendant's home. There he found Mrs. Feebeck alone. The old Dodge automobile was sitting in the yard, but at that time it had no license tag on it. There is evidence that Feebeck and his wife stayed at or about defendant's home until after the Burlington bank robbery on September 3. In the meantime Feebeck had traded the old Dodge automobile on another car at a garage in one of the nearby towns, and at the time he traded it had the Texas license plate on with the number which the sheriff had taken down when he first saw it at defendant's home on the night of August 6. The car for which Feebeck traded was used by him at the time of the Burlington bank robbery. Shortly after that robbery the sheriff searched defendant's home, and in a bureau drawer found the gun, which was the one, or like the one, used by the person who held up the Corwin bank, and also found in the same drawer a large red handkerchief folded so it could be used for a mask, showing that it had been knotted at the ends, such a one as was used by the person who robbed the Corwin bank.

Defendant and Feebeck were taken into custody in a day or two after the Burlington robbery. Anderson and Mrs. Wallace went to Cherokee, saw defendant there in the jail, and recognized him positively as the man who held up and robbed the Corwin bank. Anderson first recognized his voice, but hesitated about recognizing his features until the handkerchief was put across his face as it was worn when the bank was robbed. He was then positive of the identification. Mrs. Wallace likewise was positive in her identification of defendant as the man who robbed the Corwin bank. She had a slight acquaintance with him before by having seen him at the cream station or stores where she had transacted business at some of the small towns in the neighborhood. There are a number of other items of evidence tending to support the verdict, too detailed in themselves to be enumerated here at length.

In addition to a plea of not guilty defendant offered evidence in support of an alibi. He admitted owning a car of the model described as being used in the robbery at the Corwin bank, but contended the dent in it was put there later, and in support of this contention several witnesses who testified they had gone to his place to shoot craps told of the manner in which the dent was made in the car and fixed the time as later than the robbery of the Corwin bank, but before the robbery of the Burlington bank. It was the function of the jury and the trial court to pass upon the credibility of witnesses and the weight to be given to the evidence. It is sufficient to say, as we do, that there was an abundance of evidence to support the verdict. There is no reason to say it was contrary to law. Neither was it error for the court to overrule the motion for a new trial.

The judgment of the court below is affirmed.