No. 36,444

The State of Kansas, *Appellee*, v. Albert L. Owen, *Appellant*.

(176 P. 2d 564)

Opinion on rehearing filed January 25, 1947.
(For original opinion see 161 Kan. 361, 168 P. 2d 917.)

*George L. Adams*, of Wichita, argued the cause, and *Clarence R. Sowers*, of Wichita, was with him on the briefs for the appellant.

*Pat Warnick*, county attorney, argued the cause, and *A. B. Mitchell*, attorney general, and *L. M. Kagey, Lee R. Meador, Fred M. Field, John H. Gerety* and *B. Mack Bryant*, deputy county attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Wedell, J.: This is an appeal by the defendant from a conviction of murder in the second degree.

The charge was that appellant committed the murder of one Roy Meredith Cole by means of a firearm, to wit, a shotgun. This is the second appearance of the case in this court. (*State v. Owen*, 161 Kan. 361, 168 P. 2d 917.) Following our opinion on the first appeal

the appellant, upon request, was given leave to file an amended abstract in order to show he had filed a motion for a new trial. Having made that showing here this court allowed a rehearing. In their former brief and oral argument before this court counsel for appellant claimed certain errors including the admission of testimony and misconduct of the county attorney on cross-examination of appellant and in his argument to the jury. The motion for a new trial discloses alleged misconduct of the county attorney was not included as a ground for a new trial.

Counsel for appellant who argued the case here frankly conceded the only contention he was now making was that the trial court erroneously admitted in the state's case in chief, over his objection, evidence of appellant's conviction of the murder of a woman with a revolver twenty-eight years previously. Appellant's counsel objected to the testimony when offered by the state in its case in chief on the grounds (1) it was incompetent, irrelevant and immaterial and highly prejudicial because the offenses were not similar; and (2) the testimony was incompetent in the state's case in chief in any event and could be introduced only on cross-examination of appellant to impeach his credibility in the event appellant testified in his own defense. In the brief it is, however, also asserted the instruction to the jury touching the purpose for which evidence of the former offense could be considered was erroneous for the reason it improperly included the word "motive."

On the other hand, counsel for appellee, in substance, contend (1) the jury was fully informed concerning the previous offense by counsel for appellant on the *voir dire* examination; the jurors were individually and collectively interrogated relative to whether they would permit the previous conviction to prejudice them in this case; they uniformly stated they would not and appellant did not exhaust his jury challenges; (2) aside from the foregoing facts the evidence was competent and properly admitted in the state's case in chief for the limited purpose stated in the court's instruction; (3) appellant took the witness stand and evidence of the former conviction and the manner in which that offense was committed was admitted on his cross-examination without objection; (4) appellant is not entitled to a new trial on the ground the jury was prejudiced; and (5) the instruction was in conformity with the established law of this state.

Appellant did not deny that he shot Cole with a twelve-gauge,

single-barrel shotgun as charged, but contended he did so in self-defense. Cole died immediately with the result that his version of the shooting is lacking. Appellant was the only eye-witness to the shooting. There was, however, evidence of other witnesses that Cole had threatened to take appellant's life. Appellant's own testimony, if believed, was ample to establish the claim he shot Cole in self-defense. On the other hand, the sheriff of Sedgwick county, appellee's witness, testified appellant told him, after the shooting of Cole, that he (appellant) had decided two weeks previously to put an end to all this and had borrowed the shotgun used in the killing for that purpose. This was denied by appellant, and, of course, joined a factual issue on the subject of self-defense which was for the determination of the jury.

Since appellant does not contend there was no competent evidence to support the verdict of guilty only a brief general statement of the facts out of which the controversy arose is deemed necessary. According to appellant's version the trouble between him and the deceased arose out of an alleged relationship between the deceased and a woman who occupied an apartment adjoining appellant's. Her husband was in the service and according to the testimony of appellant the deceased called on her frequently both day and night. A hole had been bored in the plaster wall between the apartments and appellant could hear and see what transpired in the woman's room. Appellant testified the hole was there when he moved into the apartment. Appellant claimed the deceased had threatened to take his life by reason of gossip in which the deceased contended appellant had engaged concerning the deceased and this woman. According to appellant's testimony there had been previous quarrels between him, the deceased and the woman, which resulted in appellant having been beaten by both the woman and the deceased. Appellant testified that on the day of assault Cole came to his apartment with something in his hand which was concealed behind him and threatened to kill appellant. The concealed article was a skillet. Appellant stated he warned Cole not to advance any farther, but Cole continued to advance in a threatening manner and he shot him.

In the state's case in chief it offered, over appellant's objection, a record of appellant's conviction of the previous murder in the state of Oklahoma, a mandate of the Oklahoma Criminal Court of Appeals affirming the conviction but reducing the sentence to life imprisonment and a fingerprint record from the state penitentiary of Okla-

homa. The transcript discloses the trial court took the offer under advisement and admitted only such portion thereof as showed the final decree and the nature of the offense. Counsel for appellant, at the trial, conceded that evidence would be competent on cross-examination of the appellant but contended it was inadmissible as a part of the state's case in chief. Appellant also contended there was no similarity in the offenses. The state contended it was a similar offense and as such the conviction was competent solely for the purpose of showing motive, intent, inclination and method of the commission of the crime. Touching the similarity of offenses the trial court stated:

"Whether he took a gun or a pistol or a shotgun, I don't think it makes any difference; they are similar offenses."

The court stated at the time that it would admit it only for the purpose indicated by the state. The court further stated, at that time, it would instruct the jury in writing relative to the limited purpose for which it could be considered.

The cross-examination of appellant relative to the Oklahoma murder had been limited by the court to the fact appellant had shot a woman in Oklahoma by the name of Lizzie A. Morgan and to the method he employed in committing that murder, namely, by means of a .38 Colt, a six-shooter. Counsel for the state contended the court was too narrowly restricting the cross-examination and continued to ask questions, to some of which the court previously had sustained objections. In the course of the cross-examination appellant volunteered the statement that the crime for which he had been convicted in Oklahoma was an accident. Thereupon counsel for the state inquired, "How many times did you shoot her?" Notwithstanding the fact the court had previously sustained an objection to that question appellant nevertheless answered it as follows: "I think it was twice." The court permitted the last answer to stand for the reason the witness had already answered it. There was no motion to strike the answer. Without objection appellant was further asked and stated:

"Q. Were you convicted of that crime, Mr. Owen? A. What crime is that? Of killing a woman?
"Q. Yes. A. Certainly."

The trial court ruled out all other questions touching the Oklahoma offense. Touching the purpose for which the evidence of the Oklahoma offense could be considered the jury was instructed as follows:

"Evidence has been introduced of facts and circumstances relating to other similar transactions, not for the purpose of showing the defendant's guilt in the transactions referred to, but for the purpose of showing his inclination, tendency, attitude, motive and intent, and is limited to that purpose."

Evidence of similar offenses, when competent, may be introduced as a part of the state's evidence in chief. (*State v. Robinson*, 125 Kan. 365, 263 Pac. 1081.)

Appellant contends the only purpose for which evidence of similar offenses is competent, under exceptions to the general rule, is to prove the identity of the person who is alleged to have committed the crime for which he is then on trial, to show system and plan and possibly also to rebut special defenses and cites *State v. Frizzel*, 132 Kan. 261, 295 Pac. 658. The contention is too narrow. The opinion in that case states the various purposes for which evidence of similar offenses is admissible under exceptions to the general rule. The purposes mentioned by appellant are only three of them. In that opinion (citing Wharton's Criminal Evidence, 10th ed., p. 59) it was said, with approval, evidence of similar offenses is admissible under proper instructions when such offenses are relevant ". . . to prove identity of person or crime, to prove *scienter* or guilty knowledge, to prove intent, to show motive, to prove system, to prove malice and to rebut special defenses. . ." (p. 264.)

The general rule, however, is that the commission of the offense for which a person is on trial cannot be proved by evidence that such person committed another but independent offense although it be of the same sort. The basic rule is well stated in 22 C. J. S., Criminal Law, § 682, as follows:

"The general rule, which is subject to exceptions stated in §§ 683-690, infra, is that, on a prosecution for a particular crime, evidence which shows or tends to show that accused has committed another crime wholly independent of, and unconnected with, that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible, and such evidence of an independent crime is inadmissible for the reason, among others, that it ordinarily does not tend to establish the commission by accused of the offense charged, that accused must be tried for one offense at a time, and that, in accordance with the more extensive general rule, which applies to all cases, civil or criminal, the evidence must be confined to the point in issue. Questions regarding the admissibility of such evidence have been said to be within the wise discretion of the trial court, whose rulings thereon should not be interfered with on review except where such discretion is abused, or unless it is clear that the questioned evidence has no bearing on any of the issues involved in the charge."

Evidence of a similar offense is competent only, under the exceptions to the general rule, as tending to show the elements of the offense for which a person is on trial. A majority of this court believes that the conviction of the former offense had no probative value with reference to any element of crime for which appellant was on trial. The evidence was prejudicial and its admission over appellant's objection constituted an abuse of sound judicial discretion. Counsel for the state also placed too much emphasis on the former offense in his cross-examination of appellant. In view of this conclusion we need not determine whether the former offense was a similar offense or whether the instruction requires a reversal. It is sufficient to say the instruction did not cure the erroneous admission of the testimony.

In support of the admissibility of the testimony, under the exceptions to the general rule, appellee cites *State v. King,* 111 Kan. 140, 206 Pac. 883; *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081; *State v. Hendren,* 127 Kan. 497, 274 Pac. 274; *State v. Dunkerton,* 128 Kan. 374, 278 Pac. 57; *State v. Turner,* 128 Kan. 376, 278 Pac. 58; *State v. Marr,* 136 Kan. 602, 16 P. 2d 469; *State v. Gwynne,* 142 Kan. 13, 45 P. 2d 849; *State v. W. H. France,* 146 Kan. 651, 72 P. 2d 1001. We do not deem it necessary to repeat the facts in those cases. Unlike the present case the evidence of other similar offenses had probative value in those cases touching some element of the offense for which the defendant was on trial.

Appellant also directs our attention to the fact the evidence of the Oklahoma murder was introduced by the state before any evidence with respect to the instant alleged offense was offered and contends such procedure was prejudicial. The procedure was irregular but counsel for appellant virtually agreed on oral argument with counsel for appellee that the procedure was adopted by agreement of counsel to accommodate a witness. Under such circumstances appellant is not in a good position to complain.

Appellee stoutly contends if appellant was prejudiced by the admission of evidence of the Oklahoma offense, which it denies, appellant cannot complain for the reason his counsel advised the jury concerning that offense at length in his *voir dire* examination. Appellee further calls attention to the record which indicates counsel for appellant interrogated the jurors individually and collectively whether they would permit evidence of the former conviction to prejudice appellant's cause and that the answers of the jurors were

in the negative. Counsel for appellant reply the trial court had admitted the evidence in a former trial which resulted in a hung jury; they were certain the court would do so again and they were, therefore, obliged to interrogate the jury on that point for appellant's protection. The procedure adopted by counsel for appellant did not prevent him from objecting to the testimony when it was offered or relieve the court of ruling properly thereon.

The cause is remanded with directions to grant appellant a new trial in conformity with the views herein expressed.

THIELE, J., dissents.

WEDELL, J. (dissenting): Under our appellate practice we do not examine a record for the purpose of determining whether some error might be found, but are concerned only with alleged errors complained of by appellant which were raised in the trial court.

Objection was made below to the admission of evidence, *in the state's case in chief,* showing appellant's former conviction of murder. The objection was the evidence was not admissible as a part *of the state's case in chief, it was not a similar offense* and *was prejudicial.* Counsel for appellant who argued the case on rehearing stated, with commendable frankness, that was the only point he was urging. In the brief it is, however, also stated an instruction touching the purpose for which such evidence could be considered erroneously included the word "motive".

On the first hearing of the appeal counsel for appellant also contended the county attorney was guilty of misconduct in connection with the introduction of evidence touching the former offense and that such conduct was highly prejudicial. At that hearing he also contended the county attorney was guilty of misconduct to appellant's prejudice in his argument to the jury. The contention of prejudice resulting from any conduct of the county attorney has been completely abandoned on this rehearing. The record shows no such complaint was made to the trial court in appellant's motion for a new trial. Appellant does not now contend he was prejudiced by reason of the county attorney placing too much emphasis on evidence of the former offense and this court should not reverse the trial court on that ground.

Appellant had been convicted of murdering a woman in Oklahoma when he was approximately fifty-two years of age. He was sentenced to confinement for life, but was later paroled. While on

parole appellant shot and killed Cole with a shotgun, which the state's evidence disclosed he admitted borrowing for that purpose. Appellant admitted the killing, but claimed he did it in self-defense. The jury believed otherwise and the trial court approved the verdict.

Whether appellant may obtain a reversal of the judgment on the ground the evidence of the former conviction was prejudicial, in view of the fact his counsel had fully informed the jurors thereof individually and collectively on the *voir dire* examination and in view of the further fact appellant, on cross-examination and without objection, admitted that offense and the manner of its commission, will be treated later. Those facts will be presently ignored in determining the question of the competency of that evidence as a part of the state's case in chief.

While the question of remoteness of the former offense will also be treated more fully later it is sufficient to say now that, under the repeated decisions of this court, mere remoteness affects only the weight of the testimony and not its admissibility.

Of course, if the evidence of the former conviction was competent at all as tending to throw any light on some element of the offense for which appellant was on trial, it was properly introduced as a part of the state's case in chief. (*State v. Robinson,* 125 Kan. 365, 263 Pac. 1081.) By so doing appellant was advised concerning the nature of the testimony he was obliged to meet and it gave him an opportunity to later adduce any appropriate and competent evidence tending to rebut the purpose for which such testimony had been admitted. Was it competent for such limited purpose?

The position of the majority that a court may say, *as a matter of law,* that appellant's "conviction of the former offense had *no probative value* with reference to *any element* of crime for which appellant was on trial" (emphasis supplied) is, in my view, an arbitrary conclusion, constitutes an unwarranted invasion of the functions of the jury and nullifies our previous decisions. Appellant's inclination, tendency, disposition and mental attitude were of vital importance as bearing directly upon the question of his intent—that is, whether he intended murder or whether he actually killed only in self-defense. That was the sole issue in this case. Was the killing a mere accident, was it intended for the purpose of defending himself or was it a deliberate murder? Cole died immediately. Appellant was the only remaining eyewitness. The issue of appellant's intent was the all important question. While appellant claimed he killed Cole in

self-defense he also testified he did not intend to shoot him. If·that was true the killing was accidental and the intent to murder was absent. Appellant stated:

"I just grabbed up the gun and laid down on him. *I aimed to shoot over him."* (Our italics.)

As to the former murder appellant claimed it, too, was an accident. He made that claim notwithstanding his conviction and sentence therefor and notwithstanding his admission that he had shot the woman *twice with a six-shooter.* It surely cannot be said it was impossible for reasonable minds of jurors to reach different conclusions with respect to whether the former murder cast any light on the defendant's tendency, inclination, mental attitude, purpose and intent when members of this court divide four to three on that precise subject. I am perfectly willing to and freely do grant four members of this court the right to say the evidence of the former conviction would have no probative value, if they were jurors, but I deny their right, *as a matter of law,* to say it could have no probative value whatsoever for eight other jurors. The law has not yet become such a scientific yardstick. If it lays claim to such perfection and infallibility the claim is a hollow pretense for the demonstrated reason that the law is wholly incapable of making such unerring measurement of human reactions.

Of course, it is elementary and I completely agree with the general rule stated in the majority opinion that mere evidence of the commission by the same person of another crime wholly independent of, and unconnected with, that for which he is on trial is not proof he committed the latter offense. It is the exceptions to the general rule referred to in the majority opinion that are applicable and controlling here. They are found in the same text, 22 C. J. S., Criminal Law, §§ 663, 690. Moreover, we have our own well-established body of law on the subject under consideration. In the case of *State v. Frizzell,* 132 Kan. 261, 295 Pac. 658, relied upon by appellant, this court said:

"Wharton's Criminal Evidence (vol. 1, 10th ed.), page 59, after stating the rule, notes nine exceptions thereto, among which are, relevancy to prove identity of person or crime, to prove *scienter* or guilty knowledge, *to prove intent,* to show motive, to prove system, to prove malice *and to rebut special defenses,* and then adds:

" 'It is recognized that in many instances the line of demarcation is not clear, but the *discretion vested in the trial judge, intelligently and considerately exercised,* will enable the prosecution fully to present the charge, on the one

hand, and, on the other hand, to protect the accused and secure to him the rights guaranteed to him by the constitution and the laws.'" (Our italics.) (p. 263.)

In the Frizzel case evidence of another offense was held particularly applicable for the purpose of rebutting a special defense, the defense of alibi. It was there, as in many other cases, recognized that the exceptions to the general rule are founded on as much wisdom as the rule itself.

In the earlier and familiar case of *State v. Ridgway*, 108 Kan. 734, 197 Pac. 199, a grand larceny case, in which evidence relating to other offenses of the same sort was admitted, it was said:

"The question raised by objection to the evidence recited and by the instruction, is the old but forever new one of admissibility of other offenses or similar acts to prove an element of the crime for which a defendant is on trial. The general rule, the reasons for it, the exceptions to the general rule, and the reasons for them have been stated so often, it is not necessary to do so again. The subject is thoroughly discussed in 1 Wigmore on Evidence, §§ 300-367. Cases are collated in 62 L. R. A. 193 and 43 L. R. A., n. s., 776." (p. 736.)

Our later opinions are replete with similar statements. It is unnecessary to labor the point. This court repeatedly has admitted evidence, under properly limited instructions, of other wholly separate and independent offenses of the same sort or character where such evidence only tended to show some element or elements of the offense on trial. While in many of them the relation of such evidence to the element or ingredient of the offense on trial was not fairly close it was always held the weight thereof was for the jury and not for the court. Some of the numerous cases in which we have admitted evidence of offenses of the same sort under some of the various exceptions to the general rule are *State v. Stitz,* 111 Kan. 275, 276, 206 Pac. 910 (rape); *State v. Wahl,* 118 Kan. 771, 774, 236 Pac. 652 (forging and uttering check); *State v. Reuter,* 126 Kan. 565, 567, 268 Pac. 845 (larceny of domestic fowls); *State v. Hendren,* 127 Kan. 497, 274 Pac. 274, syl. ¶ 2 (blackmail and robbery); *State v. Dunkerton,* 128 Kan. 374, 375, 278 Pac. 57 (possession of liquor); *State v. Caton,* 134 Kan. 128, 131, 4 P. 2d 677 (bank robbery); *State v. Marr,* 136 Kan. 602, 605, 16 P. 2d 469 (accessory after the fact in larceny case); *State v. Harper,* 137 Kan. 695, 696, 22 P. 2d 454 (sale of speculative securities); *State v. Gwynne,* 142 Kan. 13, 15, 45 P. 2d 849 (bank robbery); *State v. W. H. France,* 146 Kan. 651, 652, 72 P. 2d 1001 (contempt proceedings in liquor case); *State v. Briggs,* 74 Kan.

377, 382, 86 Pac. 447 (obtaining money by false pretenses); *State v. Chance,* 82 Kan. 388, 108 Pac. 789 (note forgery); *State v. Ridgway,* 108 Kan. 734, 736, 197 Pac. 199 (grand larceny); *State v. King,* 111 Kan. 140, 206 Pac. 883 (murder); *State v. Mall,* 112 Kan. 63, 65, 209 Pac. 820 (grand larceny); *State v. Minnick,* 113 Kan. 385, 387, 214 Pac. 111 (receiving stolen property); *State v. Hays,* 113 Kan. 588, 215 Pac. 1109 (disposing of mortgaged property); *State v. Turner,* 114 Kan. 721, 220 Pac. 254 (liquor); *State v. Bartholomew,* 116 Kan. 590, 592, 227 Pac. 366 (grand larceny); *State v. Crow,* 124 Kan. 55, 60, 257 Pac. 735 (embezzlement); *State v. Robinson,* 125 Kan. 365, 263 Pac. 1081 (embezzlement); *State v. Collins,* 126 Kan. 17, 266 Pac. 937 (grand larceny); *State v. Frizzell,* 132 Kan. 261, 265, 295 Pac. 658 (robbery). This list of cases will be referred to later as the general list.

What then is the basis upon which this court now says the evidence of the former offense had no probative value whatever for any purpose in the instant case? Was it too remote? It will be observed the majority opinion prominently mentions the fact the former offense was committed twenty-eight years previously. The inference the reader quite naturally would make from such statement is that it was the remoteness of the offense that rendered it inadmissible. But the majority opinion deliberately refrains from so stating for the reason that such is not the law in this state. It is true we have various cases in which prior or subsequent offenses were committed comparatively near the time the offense under consideration was committed. In some of those cases the syllabus, in stating the law of the particular case, quite properly stated the facts with reference to the time the similar offenses were committed and held the evidence was competent. Such cases, however, are not authority for the proposition that if such similar offenses had been remote in time evidence thereof would have been incompetent. In every case that my research has disclosed where the contention of remoteness was squarely presented this court has ruled that mere remoteness of the separate and independent crime affects only the weight and not the admissibility of the evidence. A few examples are *State v. Ridgway,* supra, p. 737; *State v. King,* supra, p. 149; *State v. Caton,* supra, p. 131; *State v. W. H. France,* supra, p. 652.

Was it a similar offense? Appellant objected to the evidence on the ground it was not. The trial court ruled it was. Both offenses

were murder. True there was a difference in the types of weapons employed to commit the crimes. One was committed with a shotgun, the other with a revolver. Did that difference change the fact both offenses were murder and render the evidence inadmissible? Not under our decisions.

It is true that in some of the cases cited above the evidence of other offenses disclosed a common method, system, scheme or design and was held competent for the purpose of tending to prove identity of the person committing the crimes or to cast light on the element of intent, purpose or motive. In other words, in the latter cases the evidence was competent as tending to show intent, that the offense for which defendant was on trial was not a mere accident or mistake as, for example, *State v. Robinson*, supra, in which various instances, not convictions, of embezzlement were shown. But, as already indicated, that is not the only purpose for which evidence of offenses similar in sort may be introduced under exceptions to the general rule. This court repeatedly has held evidence of other offenses of a similar sort may be shown also for the purpose of tending to indicate mental attitude, disposition, inclination, tendency, knowledge, motive, purpose and intent. Among our numerous cases so holding are the first ten cases in the general list of cases heretofore cited. If evidence of other offenses of the same sort is competent for the purpose just stated when a person is on trial for a violation of the liquor or other laws, why is it not competent for the same purpose when a person is on trial for murder, a far more serious offense against society?

In *State v. Marr*, supra, involving the question of similarity of offenses, we held:

"Evidence of a prior conviction of the defendant of the theft of a tire and a wheel of an automobile is sufficiently related to the crime of being an accessory after the fact in aiding one known to have stolen automobile tires, in finding a sale for them, and removing identification wrappers with intent and in order that the offender might escape and avoid arrest, trial, conviction and punishment, to make such evidence admissible to show mental attitude, intent, tendency, inclination and knowledge along that particular type of crime." (Syl. ¶ 3.)

A person might unlawfully deliver liquor on foot. In other instances he might transport it by wagon, bicycle, motorcycle, automobile, truck or airplane. A person might commit a number of murders by means of poison, containing entirely different chemical ingredients for the very purpose of avoiding similarity of method.

He might commit a number of murders by means of choking, suffocation, poisonous gases, arson, stabbing or perhaps even by employing different firearms. A person might unlawfully obtain money by entirely different types and schemes of false pretenses. Would evidence of conviction of such offenses be rendered incompetent merely because the precise methods employed to commit the similar offenses were different? Not under our decisions. In *State v. Harper*, supra, the court had instructed the jury it could consider evidence of previous violations of the speculative securities act only for the purpose of showing identity of the accused and his motive, intent, lack of mistake and plan or system of operation and for no other purpose. We affirmed the conviction but stated the evidence of other offenses was also admissible to prove intention, inclination and tendency of the accused, citing previous cases. It follows the trial court, in the instant case, properly overruled the objection to the evidence on the ground it was not a similar offense.

The rule with respect to competency of evidence of other offenses and the purpose thereof is also applicable, under exceptions to the general rule, for the purpose of rebutting the defensive theory or a special defense. (*State v. Frizzell*, supra, p. 264.) The rule has general support. (22 C. J. S., Criminal law, § 683, pp. 1089, 1096; 1 Wharton Criminal Evidence, 11th ed., § 358.)

The instruction given by the court is stated in the majority opinion. Appellant's complaint here concerning it is that it contained the word "motive." There is no indication in the record counsel for appellant objected to the instruction upon that or any other ground when it was given. There is no indication counsel called the trial court's attention to the particular point in connection with the motion for a new trial. They do not claim they did so. But let us pass counsels' failure to direct the trial court's attention to the alleged error. The word "motive," of course, technically has a definite legal connotation. It has been similarly employed in various instructions of this character in the list of cases previously cited. Assuming, however, the word "motive" had no particular function to perform under the evidence in this case, in what manner did it prejudice appellant's substantial rights? No attempt is made to show how it did, or even how it might have, prejudiced his rights. It is merely said the word should not have been employed. Under similar circumstances we have said the use of the word "motive" in the instruction did not constitute reversible error. (*State v. Frizzell*, supra, p. 266.)

The instruction did refer to "other similar transactions." There was only one other similar offense and the instruction should have referred to "a similar transaction" instead of to "other similar transactions." Clearly the jury was not misled by that inaccuracy and no complaint is made now thereof. Under the provisions of G. S. 1935, 62-1718, this court is expressly directed to give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties. (See numerous decisions collected under the statute.)

Since there was no error in the admission of the testimony in the state's case in chief appellant could not have been prejudiced by its admission under the instruction properly limiting the purpose for which the evidence could be considered.

Let us, however, assume for the moment that this court previously has been wrong and that the evidence should not have been admitted for any purpose in the state's case in chief. Should we say the fact it was so admitted constituted reversible error under the circumstances of this case? The testimony of the former offense and the manner of its commission was admitted by appellant on cross-examination without objection and without motion to strike out such testimony after it was admitted. The testimony of the former offense was, therefore, properly in this record.

In addition appellant's own counsel on the *voir dire* examination had fully advised the jurors individually and collectively that appellant had been convicted of murdering a woman in Oklahoma with a pistol. The jury was informed appellant had been sentenced to die for that offense twenty-five years ago, that his death sentence was commuted to life imprisonment and that he was now on parole. His counsel further informed the jury the state would prove, or offer to prove, the former conviction. The jurors were questioned at length whether they would permit proof thereof to prejudice their minds against appellant. The answers of the jurors were all in the negative. Counsel thereupon advised the jurors the trial court would instruct them relative to the purpose for which such evidence could be considered by them and then inquired whether they would follow the court's instruction. The answers all being in the affirmative, appellant's counsel waived the tenth challenge.

There is not the slightest indication in this record the jury did not follow the instruction of the trial court as counsel for appellant

requested it to do. Notwithstanding that fact appellant now challenges the verdict and judgment on the ground the jury was prejudiced by reason of the testimony introduced by the state. He seeks a reversal notwithstanding the fact his own counsel previously had fully informed the jury concerning the alleged prejudicial fact. Parties should not be permitted to play fast and loose with judicial tribunals in that manner and thereby overthrow verdicts and judgments solemnly reached. It appears counsel for appellant endeavored to persuade the jury by the *voir dire* examination that appellant had nothing to conceal and wanted the jury to be fully advised concerning his former record. That method was conceived to be the best strategy. Perhaps it was. But if appellant was prejudiced by reason of his former conviction, what is there in this record to indicate the prejudice did not result from the disclosure his own counsel made to the jury? Nothing.

Counsel for appellant now endeavor to justify their conduct on the *voir dire* examination by stating they knew from the first trial of the case, which terminated in a hung jury, that the trial court would again admit the testimony of the former offense and, therefore, they informed the jury concerning it. They had that privilege but they cannot now escape the consequences of exercising that privilege by merely asserting the alleged prejudice resulted by reason of the evidence adduced by the state and not from the same identical facts they previously had related to the jury. If they believed the prior ruling of the trial court was erroneous and that the court would again make the same ruling they should not have narrated the alleged prejudicial facts to the jury, but should have objected to the testimony when the state offered it.

The majority has ruled the disclosure of the former conviction of murder to the jury by appellant's own counsel did not prevent them from objecting to such evidence when it was offered by the state. Neither did it prevent the trial court overruling the objection when appellant's own counsel had already fully informed the jury of the alleged prejudicial testimony, had obtained the jury's commitment that it would not be prejudiced thereby and that it would consider the evidence only for the purpose indicated in the court's instructions. In my opinion it is neither fair to the trial court, nor logical, to say the trial court, under the circumstances of this case, abused sound judicial discretion in the admission of the testimony. The judgment should be affirmed.

On the trial the state complained of the trial court's rulings restricting its cross-examination of appellant. The state has not cross-appealed from such rulings. Since, however, this case is being remanded for a new trial it may not be out of place to direct attention to the rule governing such examination. (*State v. Pfefferle*, 36 Kan. 90, 12 Pac. 406; *State v. Pfeifer*, 143 Kan. 536, 56 P. 2d 442, and cases therein cited.)

BURCH, J., concurs in the foregoing dissenting opinion.

