## THE STATE OF KANSAS v. HARRY MORTON.

### No. 11030.

1. CRIMINAL PROCEDURE—*permitting names of additional witnesses to be indorsed on information at trial, matter of discretion.* The matter of allowing the prosecution to indorse the names of additional witnesses upon an information after the trial has begun, is largely within the discretion of the trial court, and it is only where the court abuses its discretion in this regard that error will lie.

2. AFFIDAVIT ADMITTED AS DEPOSITION—*to prevent continuance, statement out of court not admissible to impeach affiant.* When an affidavit is made in support of an application for a continuance, and the prosecution consents that the facts alleged in the affidavit shall be treated as a deposition, and the continuance is then denied, the court will not allow alleged statements of the absent witness, made out of court, to be introduced to impeach him. But, Quære: May not statements and matters to which specific reference is made in the deposition be contradicted by other witnesses?

3. ———— *but, if rule violated in this case, error not material.* The evidence examined, and it is *held* that, if the testimony referred to is objectionable, it is not sufficiently material to have prejudiced the substantial rights of the defendant.

Appeal from Cowley District Court. J. A. Burnette, Judge. Opinion filed April 9, 1898. *Affirmed.*

*L. C. Boyle*, Attorney General, *J. C. Stanley*, County Attorney, for the State; *Joseph O'Hare,* of counsel.

*M. G. Troup* and *Smith & Cogdal*, for appellant.

JOHNSTON, J. Harry Morton was convicted of ravishing Agnes C. Baker, who, at the time, was under the age of eighteen years; and he appeals from the judgment of conviction.

The first error assigned is based on the ruling allowing the county attorney to indorse the names of certain witnesses upon the information at the com-

mencement of the trial. Several days in-

1. Names of wit-
nesses indorsed
on information
at discretion of
court.

tervened after the application to indorse was made and before any testimony was introduced. No motion was made to postpone the trial on account of the ruling, nor does it appear that there was any unfair advantage thereby taken. Only one of the persons whose names were so indorsed testified, and we fail to see that any substantial right of the defendant was prejudiced by the order. It was a matter largely within the discretion of the trial court, and it is only in cases where the court abuses its discretion in this respect that error will lie.

The next contention is that error was committed in overruling the defendant's motion for a continuance on account of the absence of a witness named Seymour. The motion was supported by an affidavit which set forth the testimony that it was alleged Seymour would give if present, and the court held that a sufficient showing for a continuance had been made. The State thereupon consented that the facts alleged in the affidavit should be read and treated as the deposition of Seymour, and the court then refused the continuance. The statute expressly provides that, if the opposite party will consent that the facts alleged in the affidavit shall be read in evidence and treated as a deposition, no continuance shall be granted; and hence there was no error in this ruling. Gen. Stat. 1897, ch. 95, § 329.

In this connection it is earnestly insisted that the defendant was greatly prejudiced by allowing two witnesses for the State to give testimony which tended to impeach the absent witness. The testimony tends to show that the defendant took the complaining witness in his buggy to a festival at the town of Rock. It is claimed that the offense was com-

mitted on the way home from the festival, and about eleven o'clock at night, in the buggy in which they were riding. Seymour and two other young men, who had been at the festival, rode home on horseback, and it is claimed that a part of the time they rode near the buggy in which the defendant and complaining witness were riding. In the affidavit purporting to set out the testimony of Seymour, he is made to say that for a short distance he rode behind the buggy in which the defendant and the complaining witness were riding; that it was a clear, moonlight night, and that he could easily see the occupants of the buggy; that he and his companions finally rode around and went ahead of the buggy, until they reached a certain corner; that he looked back and could see the occupants, and that at no time while he was near the buggy did they have an opportunity to have sexual intercourse without being discovered by him, and that he saw no such act. The affidavit makes Seymour then expressly refer to a conversation had between J. W. Dibbins, the brother-in-law of the complaining witness, and himself, in regard to what he observed on the ride home from the festival, and what his testimony would be at the trial.

At the trial, Dibbins and his wife, who was also present at the time referred to, gave their rendition of the conversation had with Seymour, and 2. Alleged statements of absent deponent not admissible, when. it differs materially from that set forth in the affidavit as the testimony of Seymour; in fact, it directly contradicts him in essential matters; and the contention is that the State was allowed to impeach Seymour upon matters to which his attention had not been called and no opportunity given him for explanation. *The State v. Bartley* (48 Kan. 421, 29 Pac. 207), is cited as an authority against this ruling. There, it was held that

where the facts set up in an affidavit for continuance are read and treated as the deposition of the absent witness, the court cannot permit alleged statements of the witness, made out of court, to be introduced to impeach his evidence in the deposition without his attention having been called thereto. There is a marked distinction, however, between the facts in that case and the present one. There the statements of the absent witness, made out of court and to which his attention had not been called, were received in evidence for the purpose of impeaching him. Here the attention of the witness was expressly called to the statements upon which there was a dispute, and he gave his version of them. His testimony as to these statements appears to have been given in anticipation that Dibbins would testify on the same subject, and it does not appear that he was contradicted on any matter about which he did not testify.

If it be granted, however, that the case falls within the rule of the Bartley case, and that the testimony was incompetent, we do not regard it to be sufficiently material to require a reversal.

3. Error immaterial, when.

The complaining witness did not attempt to fix with any definiteness the place where the offense was committed. She stated that she thought it was in a draw of some kind, but, not being familiar with the road and there being several draws, she was unable to state definitely at what point the offense was committed. Seymour and the young men who were riding with him were not, according to their own testimony, close to the buggy in which the defendant and the complaing witness were riding, except for a distance of about a mile; while it appears that they were required to travel a distance of about five miles in going home from the festival. There is also testimony tending to show that there were five or six

draws in a distance of two miles of the road over which they traveled.

The testimony of the defendant and that offered in his behalf shows that the back curtain of the buggy was down, and that while Seymour and his companions were riding behind the buggy they had no opportunity to see the occupants or to observe their conduct. The testimony of his witnesses also shows that, in the short distance they rode ahead of and near to the buggy, they were giving little heed to Morton and the complaining witness, but were in fact engaged in conversation about other persons and things. In fact, his testimony tends to impeach the statements in the deposition. Seymour is made to say that there were no curtains on either the sides or back of the buggy, and that for half a mile before they reached a certain draw they rode behind, but very close to the buggy, and for another half-mile from the draw they rode ahead of and close to the buggy, and that all the time the defendant and the complaining witness were plainly seen by him ; while the companions of Seymour, who were riding with him, each testified that the back curtain of the buggy was down, and that while riding in the rear the occupants of the buggy could not be seen. Their testimony is to the effect that they rode around the buggy in a gallop, and only had a momentary glimpse of the occupants of the buggy ; that they rode ahead about three hundred yards, and kept that far ahead until they reached the point of separation, and that during all that time neither the witnesses nor Seymour were paying any attention to the buggy or its occupants. In this respect the defendant's testimony tends to impeach the witness Seymour on material points of his testimony. In view of this consideration and the fact that his testimony

was unimportant, we cannot hold that the admission of the testimony of Dibbins, if incompetent, constitutes reversible error.   The statute expressly provides that in appeals of this character, "the court must give judgment without regard to technical errors or defects or to exceptions which do not affect the substantial rights of the parties.   Criminal Code, § 293.

The remarks of the trial Judge to which objections are made do not appear to us to have been prejudicial and furnish no reason for setting aside the verdict.

The judgment of the District Court will be affirmed.