The State v. Howland.

---

No. 20,936.

THE STATE OF KANSAS, *Appellee*, v. ED HOWLAND, *Appellant*.

SYLLABUS BY THE COURT.

1. CRIMINAL TRIAL — *Indorsement of Names on Information — Judicial Discretion.* The belated indorsement of names of witnesses upon an information charging a criminal offense is a matter within the sound discretion of the trial court; and, where it does not clearly appear that the defendant was prejudiced thereby, the granting of permission to indorse the names of witnesses on the information when the case is called for trial is not error.

2. SAME—*Statutory Rape—Incompetent Evidence.* When direct, positive and legally sufficient testimony to support the criminal charge stated in an information has been introduced in evidence, the fact that certain features of some merely corroborative evidence, also introduced over objection, were incompetent is not ordinarily of such gravity as to necessitate a reversal of the judgment.

3. SAME—*Not a Fair and Impartial Trial—New Trial.* The evidence urged in support of a motion for a new trial examined and held to show that parties interested in the prosecution prevented the defendant from making effectual preparation for his defense and that the result deprived him of a fair and impartial trial.

Appeal from Riley district court; FRED R. SMITH, judge. Opinion filed March 10, 1917. Reversed.

*F. L. Williams, C. Vincent Jones,* both of Clay Center, and *A. M. Johnston,* of Manhattan, for the appellant.

*S. M. Brewster,* attorney-general, *Hal E. Harlan,* county attorney, and *J. E. Brooks,* of Sedan, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff was convicted of statutory rape and appeals. The errors assigned will be noted in the order presented.

The first and second of these are founded on the indorsement on the information of the names of witnesses for the state after the case was called for trial. The county attorney explained that he did not know that these parties had knowledge of facts material in the case until April 17, 1916, which was apparently about the time the case was called. This statement he later qualified saying that he had learned sooner about two of the witnesses but had until then no opportunity to get the court's permission to indorse their names. This is hardly a serious matter. No prejudice to defendant's rights is shown. (*The State v. Morton,* 59 Kan. 338, 52 Pac. 890; *The State v. Mullins,* 95 Kan. 280, syl. ¶ 5, 147 Pac. 844.)

The next error urged relates to the admission of incompetent testimony. The prosecutrix was permitted to testify that certain written notes from defendant had been received by her, one directly and another handed to her by her sister. Another witness had been permitted to read the notes. There is some merit to the contention that the prosecutrix was not shown to be competent to give her opinion that the handwriting in the notes was identical; and the witness who had been permitted to read their contents did not know whether the defendant had written them or not. It is also true that

the sister of the prosecutrix did not know whether the note delivered by defendant to her and handed by her unread to the prosecutrix contained any writing or not.

It is contended that the principle declared in *Stevens v. The State,* 50 Kan. 712, 32 Pac. 350, was violated in this case. There the important question was whether the letter had been written. Here there is no doubt that letters or notes were written from defendant to the prosecutrix, but the criticism is that the witnesses were not shown to be competent to testify that they were in the same handwriting, that the sister of the prosecutrix did not know the contents of the note received by her from defendant for delivery to the prosecutrix, and that the confidante who was permitted to read the notes did not know whether defendant was the author of them.

The court does not think these matters are of sufficient consequence to disturb the result. It thinks it unlikely that the jury attached much importance to this phase of the evidence, which was only intended to corroborate the positive testimony of the prosecutrix, so far as to show some unusual degree of intimacy between her and the defendant. Her testimony did not need corroboration, if the jury saw fit to believe her evidence on the main facts. Counsel urge that her story was so improbable that it did need corroboration. We see nothing improbable about it. Doubtless she gave birth to a child. Doubtless she was not of age. Doubtless she was not married. And thus doubtless the state law had been violated upon her person. She says it was done by the defendant. "A charge easy to make and hard to disprove," says her counsel. True. And since the offense is seldom or never committed before witnesses, the offense is also hard to prove by any corroborative evidence. The offense would ordinarily have to go unpunished unless the positive and uncorroborated evidence of the prosecutrix were sufficient. Such slight additional evidence as the passing of notes between the parties may be taken for what it is worth, although it would be proper for the trial court to limit its significance under proper instructions.

In this connection it might as well be frankly avowed that appellate courts in this day and generation are strongly dis-

inclined to overturn just judgments in criminal cases, and that many such errors as would reverse a judgment twenty or thirty years ago are given far less potency in our time. If this tendency should prove to be harmful it will doubtless be checked by stricter judicial interpretation or by legislative decree, but the flood of decisions handed down every month, in half a hundred jurisdictions in this republic, shows no present inclination to call a halt in the tendency to brush aside technical errors where the appellate court has no misgiving as to the justice of the net result. Sometimes these technical errors are disposed of by strained and sophistical reasoning. Other courts more frankly admit the errors assigned but refuse to attach to them sufficient importance to disturb the judgment. (Crim. Code, § 293; *The State v. Morton,* 59 Kan. 338, 343, 52 Pac. 890.)

A still more perplexing question arises on the error assigned in overruling the motion for a new trial. When the prosecutrix was found to be pregnant she was taken to a hospital in Missouri, and when her child was born it was delivered to people in Iowa who adopted it under sanction of a Missouri court. No opportunity was given the defendant to learn the facts, to see the child or learn its whereabouts, to learn whether it was born normal or prematurely, to ascertain its color— and in this case that was somewhat important since its mother was partly of Indian blood and the defendant, its reputed father under the statutory charge, was of a dark complexion. The child has since been ascertained to be of—

" 'Very fair, light complexion, with eyes of pale blue color, and that it has light auburn hair; that the features and facial expressions of said child are not in any respect suggestive of likeness to the defendant.'

"And the affidavit of Clara Howland sets forth:

" 'That the appearance of said infant child is such as to convince any person seeing it and seeing and knowing the defendant and the said Pearl Horrell, would be convinced by such sight of the child, that it is not the child of defendant.'

" 'That the foster parents will testify that in their opinion from the appearance of said child, and from the general condition and state of health it was of premature birth.'

" 'That the foster parents of said child would be willing to bring the said child into court and have stated to affiant that they would present the child in court if a new trial in said cause is granted.' "

If the child was prematurely born, its birth would not correspond by natural gestation to the date of the offense charged, and thus the fact of birth would not corroborate the evidence of the offense proved and for which the defendant was convicted. If the child was of fair complexion with pale-blue eyes and light auburn hair, it would be somewhat persuasive evidence that it was not begotten by the defendant, a man of dark complexion, nor born of the prosecutrix who was partly of Indian blood. Therefore, the fact of its birth would prove nothing as to the illicit relations of prosecutrix and defendant. It was not necessary for the prosecution to show that a child was begotten or born as a consequence of any illicit relations between the defendant and the prosecutrix; but since this was done, presumably to bolster up the testimony of the prosecutrix, as she had theretofore been intimate with other males, the facts and circumstances attending the birth of the child in Kansas City should have been open 'to investigation by the friends and counsel of the defendant. The prosecution had imposed silence on the hospital people in Kansas City. Counsel for defendant requested the special counsel for the prosecution "to put down the bars that you have put up . . . so that I can have the same access to information that you have." The state's special counsel replied: "Well, we did n't intend that you should obtain it; we intended that she should be put where information could n't be obtained." When asked when the child was born, and where it was, the state's counsel replied, "I can't reveal that; that is information that you can't get."

Our law requires that the names of witnesses for the prosecution be indorsed on the information. The purpose of that is to put the defendant on his guard against testimony from them, and so that he may have an opportunity to investigate matters about which they may testify, and to investigate its accuracy, and to seek evidence to counteract it. In substance, if not in form, this principle, designed to protect the rights of one accused of crime, was grossly violated by the prosecution.

While the general rule is that the propriety of exhibiting a baby to the jury is ordinarily within the sound discretion of the trial court (*The State, ex rel., v. Browning,* 96 Kan. 540, 152 Pac. 672), yet in this case defendant or his counsel should

have had opportunity to see it, to ascertain the facts of its birth, whether it was prematurely born, whether it was of such pale blond complexion as to raise a doubt about its parentage, and this apart from the nicer question of its facial lineaments corresponding to those of the defendant.

Counsel for the state direct our attention to the fact that notwithstanding the obstacles which had been raised to prevent defendant and his counsel from investigating these circumstances and facts pertaining to the birth of the child, his counsel announced that he would be ready for trial and did not make an application for a continuance. The abstract reads:

"That after having investigated, before he left The Willows [the lying-in hospital in Kansas City, Mo.] he stated that he would be ready for trial. Stated this not because he had satisfied himself as to the conditions at The Willows, nor as to where the baby was, but because he had gained all the information that was apparently available and didn't know any way that he could break through further than he had tried already to break through."

We think the whole record shows that the defendant exercised unusual diligence in seeking to ascertain the facts and to prepare his defense, and that he was prevented from effectual preparation by the circumstances briefly narrated above; and he could not assume in advance that the facts so pertinaciously withheld from him before the trial would be used so disastrously against him to corroborate the evidence of the prosecutrix. On the broad ground that the record clearly discloses that the defendant did not have a fair trial, the judgment is reversed and a new trial awarded.

MASON, J. (dissenting) : As I read the record the only information that was denied to the defendant's attorney was the name of the persons who had adopted the child. The withholding of this information seems to me to have been entirely proper. The child was only about a month old at the time of the trial, and I do not think evidence of its appearance would have been competent, but if the representatives of the defendant were entitled to an opportunity to see it, the fact forms no basis of error, for no application was made to that end.

BURCH and MARSHALL, JJ., dissent.