284

No. 31,450

The State of Kansas, *Appellee*, v. Herman Coy, *Appellant*.

(36 P. 2d 971)

Opinion filed November 3, 1934. 

*Kirke C. Veeder*, of Independence, for the appellant.

*Roland Boynton*, attorney-general, *Everett E. Steerman*, assistant attorney-general, *Warren B. Grant*, county attorney, and *Richard L. Becker*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

Thiele, J.: Defendant appeals from a conviction on a charge of embezzlement, the assignments of error having to do with the trial court's admitting in evidence a transcript of stenographic notes made by a stenographer at a meeting where defendant, in response to 'questions by the county attorney, answered as to his handling of the funds alleged to have been embezzled.

The record shows defendant had been in the employ of the Kansas Gas and Electric Company for about eight years, first as book-keeper and later as cashier. During the period he was acting as cashier he had full access to the money paid by customers, and handled all the receipts issued for such payment. He so manipulated the receipts that he pocketed the cash, and from various accounts appropriated to his own use the approximate sum of $2,300. Discovery of his shortages was made when delinquency of a certain account was called to the attention of the chief clerk. On the evening of September 27, 1932, defendant and the chief clerk went to the home of the district manager, who went back to the office with them and there checked the accounts, whereupon defendant orally confessed to having stolen from the company approximately $2,300. Defendant voluntarily went to the police station and asked to be put in jail, but was told he was doing so of his own free will and

could be released at any time. The next day the county attorney
was notified, and he proceeded to question defendant, which ques-
tions and answers were taken down by a stenographer regularly
employed in his office. At the trial the company's chief clerk and
its district manager testified with reference to being present when
the defendant was questioned by the county attorney, although the
record does not show they testified to what was said there. Each
testified, however, to conversations with the defendant in which the
defendant stated to each of them that he had appropriated moneys
of the company which came into his possession. It is not necessary
that such testimony be recited here, further than to say that in a
general way it covered the same matters inquired of by the county
attorney. These two witnesses and another also testified with ref-
erence to the conversations when defendant was confined in the city
jail prior to the time he was questioned by the county attorney.
Thereafter the stenographer was sworn as a witness and testified
as to his qualifications and employment, and that he was present
when the county attorney questioned the defendant, and that he
made stenographic notes of the exact conversation that took place.
The notes were offered in evidence, and objection was made that
they were immaterial. The witness then testified that he had made
a true and correct transcript of the stenographic notes, and the
transcript was offered in evidence, the defendant objecting that it
was not the best evidence. The court admitted both the notes and
the transcript, and thereafter the transcript was read to the jury.
During the reading defendant objected because the transcript was
not the best evidence and because "there is an attempt by the state
to convict the defendant without confronting him with the witnesses
against him." No attempt was made, either on direct or cross-
examination, to show the independent recollection of the witness as
to what was said. Defendant complains of the admission in evi-
dence of the transcript, claiming that the defendant did not sign the
transcript, and it did not constitute the best evidence. No complaint
is made as to the competency of the stenographer nor as to the
accuracy or identity of the notes, nor that the notes were not
correctly transcribed, the contention being that while the witness
could have testified to his best recollection of what was said, and
could have refreshed his recollection by reference to his notes, it
was error to permit the transcript of the notes to be read. It ap-
pears from the record that the transcript itself was never exhibited

to the jury nor in the jury's possession, either during the course of the trial in the court room or while the jury deliberated, but was simply read from the witness stand and used during argument of the case.

It is not contended that any undue advantage was taken of the defendant, nor that a confession or admission cannot be procured as a result of questioning by proper officers, but that the proper method to have proved what was said was by having some person who was present detail his recollection of what questions were asked and answers given. The rule applicable to proof is quite the same as proof of former testimony (16 C. J. 716), and any person who heard it is competent to testify as to the substance of what he heard if he heard and understood all of it, and where stenographic notes were taken and transcribed, the transcript may be introduced or the person who made the notes or transcript may read therefrom, provided there is evidence of identity and correctness, but such evidence has been held not to be superior to the testimony of a witness who heard the testimony. (16 C. J. 759, 10 R. C. L. 972.) See, also, 2 Wigmore on Evidence, § 1330, wherein it is said in part:

"(2) The report of a stenographer is, of course, more trustworthy in the ordinary case than mere recollection; but, regard being had to the serious burden of searching for a preferred source of evidence and of showing it to be unavailable, the advantage to be gained by requiring a stenographic report to be used if available does not seem worth the inconvenience; and such an innovation is discouraged by the courts:"

It may be conceded that many texts and cases can be cited to the effect that an oral confession is to be proved by the testimony of some person who heard it made, and that such testimony is to be preferred to the use of a transcript made from stenographic notes of such confession. As we view the question, however, we take note of the fact that our statute provides for the stenographic reporting of civil and criminal trials in court, and that at many hearings before administrative boards and officers the entire record of the proceedings is so made, and that the transcripts are considered much more accurate than the recollection of some person present as to just what was said. Suppose in the instant case the record had been made with a sound-reproducing machine, such as is used in many offices, would the recollection of a person present be better evidence than the record made, or better than a written statement prepared from such record?

The question of admissibility of a stenographic record was discussed in the case of *Wright v. Wright,* 58 Kan. 525, 50 Pac. 444, wherein objection was made to the court stenographer reading from his typewritten transcript of notes taken at a former trial, when he stated he could not testify from memory. The typewritten translation was refused and error was alleged in such refusal. On appeal this court said:

"The rule of many of the older cases was that a witness might refresh his memory, as to forgotten matter about which he was called upon to testify, by reference to a memorandum of the same made at the time or very soon thereafter; having done which, he might then testify; but in such case his testimony must be from memory and not from the memorandum. The liberalizing tendency of the courts has now enlarged the rule so as to include cases where the witness is still unable to testify from memory, after an examination of the memorandum, but is able to identify such memorandum as made by himself, at or near the time of the transaction to which it relates, for the purpose of preserving a true account of it, and that he knows it to have been truly and correctly made. In such cases he may give the contents of the memorandum as his own evidence." (p. 528.)

And further the court said:

"Can there be any doubt that the notes of an official court stenographer are memoranda which fall within the rule above quoted? We think not. That the testimony of witnesses and the speech of people generally can be faithfully—literally—recorded by persons skilled in the stenographic art is known to everybody. It is the almost universal habit of courts, under the authority of statutes, to employ such persons for this purpose. Their work is performed under the sanction of an oath, and provision is made in this state for the preservation of their notes for future reference and use. Were it possible to write the testimony of witnesses in long hand, as it is delivered by them, no question could be raised as to the right of a witness who had correctly recorded it to read to the jury, although all memory of it had passed from his mind. Does the fact that it was written in characters unintelligible to persons who have not familiarized themselves with shorthand systems of penmanship make any difference? If it does, the basis for the allowance of much expert testimony is in danger of being demolished. The stenographer in this case testified that he had correctly taken the testimony of the witness Wright; and the fact that he had no independent recollection of such testimony after reading his notes, does not preclude him from giving to the jury what he knew to have been correctly done at the time it was performed." (p. 530.)

The above case has been cited with approval in *Garden City v. Heller,* 61 Kan. 767, 60 Pac. 1060; *Railroad Co. v. Osborn,* 64 Kan. 187, 67 Pac. 547; and *State v. Gentry,* 86 Kan. 534, 121 Pac. 352. In the last-cited case it was held that where the county attorney's stenographer testified she had correctly taken down and transcribed

testimony at a preliminary hearing, it was competent for her to read the transcript. "This was in effect testifying that she made a memorandum of Belknap's testimony as he gave it, and from the memorandum was able to swear to what he had said." (p. 535.)

In support of his contention defendant cites three Kansas cases. One is *State v. Foulk*, 57 Kan. 255, 45 Pac. 603, which holds:

"In all prosecutions the accused is entitled to be confronted with the witnesses against him and to meet them face to face; and testimony of a witness given upon a former trial, and which was written down by the court stenographer, cannot be read in evidence against the defendant except with his consent." (Syl. ¶ 2.)

The case is not in point, for the reason that the testimony included in the transcript was that of the defendant himself and not of some absent witness. And see *State v. Nelson*, 68 Kan. 566, 75 Pac. 505, where the Foulk case is discussed, and the rule therein stated is limited.

Another case relied on is *State v. Baldwin*, 36 Kan. 1, 15, 12 Pac. 318, where, for purposes of impeachment, a stenographer employed by defendant's attorneys had made a stenographic report of the preliminary hearing, was called as a witness, and testified he had made a transcript and destroyed his notes. He was requested to refresh his recollection from the transcript. An objection to his testimony was sustained. It was said:

"The writing and memorandum are used, not as evidence, but to aid the memory. . . . It is only when the memory needs assistance that resort may be had to these aids." (p. 15.)

After making comment, from which the above is quoted, the court held that because of immateriality, the evidence was properly refused. The case was decided almost forty years ago. Since that time *Wright v. Wright* and *State v. Gentry*, supra, have been decided, and the force of the holding in the Baldwin case has been much lessened.

The other case relied on is *State v. Hewes*, 60 Kan. 765, 57 Pac. 959. The testimony objected to in that case was clearly hearsay, and what is said is not in point here.

We do not deem it necessary to analyze the cases from other jurisdictions cited by the defendant.

Complaint is made that after the transcript was offered in evidence it was read to the jury by the county attorney and not by the stenographer who made it. Its authenticity had been established by

the testimony of the stenographer, it contained the questions asked by the county attorney and the responses of the defendant. We fail to see where it made any difference who read it aloud to the jury.

It must be remembered here that the matter of the confession in the county attorney's office, the taking of notes by the county attorney's stenographer, and the transcribing of them, and the introduction of the transcript all followed testimony of other oral confessions of which no complaint is made. Even though it be held that the method of showing what took place in the county attorney's office "cut across lots," yet there is a great lack of showing that the defendant was prejudiced. If there was any error, it was highly technical and did not affect the substantial rights of the defendant. (R. S. 62-1718.)

Another contention made is that the transcript was altered. It appears that at some time certain questions and answers were underscored. Why this was done does not appear. Possibly it was to permit a more ready reference to what were considered the important parts thereof. Had the transcript been exhibited to the jury, there might be some point to the contention, but as the jury never saw it, we fail to see where it prejudiced the defendant.

Complaint is also made because the court made an order clarifying the court's finding on the motion for a new trial, by stating the above transcript was never at any time exhibited to the jury nor examined by it during its deliberations. Such a practice is not commended. It is not denied that the finding speaks the truth. The only effect is that it prevents the defendant from drawing a wrong inference from the instruction to "candidly consider the evidence," etc., and this does not constitute error.

The judgment of the trial court is affirmed.