No. 31,791

THE STATE OF KANSAS, *Appellee*, v. MAX HANDLER, *Appellant.*

(50 P. 2d 977)

Opinion filed November 9, 1935.

*Payne H. Ratner,* of Parsons, and *W. E. Archer,* of Hiawatha, for the appellant.

*Clarence V. Beck,* attorney general, *Earl B. Swarner,* assistant attorney general, *Forrest D. Smythe,* special assistant attorney general, and *Lloyd S. Miller,* county attorney, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is from a conviction of grand larceny in the district court of Brown county of one who for many years had been in the automobile tire and accessory business in St. Joseph, Mo. The information charged the defendant with having stolen in Brown county, Kansas, on or about the —— day of May, 1933, four tires, four inner tubes and four rims of the value of more than $20 belonging to one Frank King.

The principal witness for the state was one Earl Corder, who, at the time of the trial, was serving a term in the Kansas penitentiary for burglary and larceny committed in Marshall county and had

been in penal institutions twice before. He testified that he went to Mr. King's garage at the request and under the direction of the defendant, for whom he had been working for several months, and was told by defendant to get the four tires off the King truck and bring them in as he wanted them for an Iowa man the next morning. A man by the name of Barker went with him and they removed the tires, inner tubes and also the rims and took them to the defendant in his place of business in St. Joseph and helped put the tires and inner tubes on the Iowa truck the next morning after the rims had been removed from the tires, and that the defendant gave him $32 for them; that he had stolen many tires during the previous year and delivered them to the defendant and he always told the defendant where he got them and he usually received about $5 per tire after he had ceased working for the defendant on salary.

Three rims were found in the defendant's place of business by city police and sheriffs in searches made by them in July or August of that year, which rims were identified by Corder and Frank King as being the ones belonging to and taken from the King automobile in May, 1933.

The state offered and introduced over defendant's objections evidence as to the finding about the same time of other automobile accessories in defendant's place of business that were claimed to have been stolen from other places and belonging to other persons, and evidence of claimed owners identifying the same as having been stolen from them within a year. The trial court made numerous rulings on the objections of the defendant as to the competency, relevancy and materiality of such testimony, to which rulings exceptions were taken by the defendant and to the overruling of defendant's motion for an instructed verdict of acquittal and to the two motions for a new trial.

As assignments of error the defendant in his brief as appellant outlines the following four questions involved:

"1. Error in overruling defendant's motions for new trial.

"2. That the district court erred in overruling defendant's motion for a directed verdict of acquittal.

    a. Alleged stolen articles not identified.

    b. Value of alleged stolen articles not established.

"3. Error in the admission of evidence.

    a. Other and unrelated and unproven crimes and course of conduct.

    b. Admission of hearsay testimony.

"4. Remarks and attitude of district court throughout trial clearly prejudicial to rights of defendant."

Appellant in presenting the first question involved leaves the ruling on the first motion for a new trial for consideration under other headings, but directs special attention to the ruling on the second motion. For consideration of this question some dates are of particular importance. As stated above, the larceny was charged to have been committed in May, 1933, and some evidence shows three rims and other articles were found by police officers and sheriffs on the defendant's premises when searches were made by them in July and August, 1933. The trial was had in the month of November, 1933. The verdict of guilty of grand larceny was rendered on the 21st of November, 1933. The first motion for a new trial was promptly filed and was heard and overruled on the 28th of the same month and defendant was sentenced thereafter on the same day. The notice of appeal was served on the county attorney, November 28, 1933, and the appeal was duly filed in this court on January 6, 1934, and the appeal has been pending here since that date.

The second motion for a new trial was filed in the district court of Brown county on December 27, 1934. The terms of district court in Brown county were at the time of the trial, and are now, in February, May and November. The motion is supported by two affidavits of parties that had been in jail or penitentiary with witness Corder. One affiant states that he heard Corder say in the penitentiary that he had "framed" Max Handler in order to get his time cut and had testified falsely against Handler for that purpose. The other stated in his affidavit that he was in the Brown county jail with Corder just before the Handler trial and he heard the county attorney, sheriff and deputy sheriff of Brown county tell Corder to go ahead and testify against Handler and they would see to it that his time would be cut. The trial court struck this second motion for a new trial from the docket. The appellant insists this was error, especially since Corder was the principal witness for the state and that the state filed or presented no affidavit or other evidence in opposition to the two affidavits supporting the motion. We see no error in thus disposing of this second motion for a new trial. The court found that it was frivolous and filed for the purpose of vexation and delay. The motion itself contained the sub-

stance of the affidavits offered in support thereof, namely, that the evidence offered was newly discovered, that it showed the principal witness for the state had made statements in the presence of other inmates in the state penitentiary that he "had framed" the defendant in order to get his time cut, and had testified falsely against the defendant at the trial in order to get in good with the county attorney and sheriff to get a parole sooner than he otherwise would. With these statements in the motion before the trial court the finding that the motion was frivolous and should be stricken from the docket was equivalent to an order overruling it. Under these and other circumstances stated in this opinion we find no error in this ruling.

The appellant's second assignment of error is because the rims were not sufficiently identified and the value of the articles charged to have been stolen was not established. As to the identification of the rims, there is the testimony of King, who said he especially recognized them by having observed spots of red paint on them which he had not seen on others of the same kind and make, also the testimony of Corder, who said he recognized them as the ones he had taken off the King truck and had seen them separated from the tires in defendant's place of business before the tires were placed on the Iowa truck. On cross-examination Corder said he might not be able to distinguish these three rims from others of exactly the same kind, size and make. The well-recognized rule is, as appellant cites from 17 R. C. L. 65, as follows:

"The prosecution must identify stolen property found in the possession of the accused with that for the theft of which he is indicted, and this must be done by the most direct and positive testimony of which the case is susceptible."

It is argued that other rims of the same size, kind and make might have on them spots of red paint, but there goes with the identification of these two witnesses the statement of Corder that the rims were removed from the King tires in the defendant's place of business before the tires were placed on the Iowa truck, which helps to locate them in defendant's possession.

In the case of *State v. Callabresi*, 135 Kan. 463, 11 P. 2d 725, wheat alleged to have been stolen was held to have been sufficiently identified by having some grains of white wheat mixed with the usual red grains of wheat, there having been about 25 bushels of white wheat in the bin before 200 bushels of red wheat were also put in that bin, all of which was removed and part of it said to have been stolen.

In the case of *State v. Swanzy*, 78 Kan. 889, 97 Pac. 1134, the identification was held to be sufficient between a butchered animal and one alleged to have been stolen while alive.

Some of the cases cited by appellant were where the only evidence on the subject of identity was circumstantial. In the case at bar the evidence was not circumstantial. The rule that such identifying testimony is required to be the most positive and direct of which the case is susceptible (17 R. C. L. 65) surely does not extend to the limit of an impossibility where two things look exactly alike. We think there was sufficient identification of the rims under the authorities above cited.

As to the value of the articles alleged to have been stolen not being established, the appellant insists that the only evidence of the value of these articles was that of King as to the new price of the articles and the service or use they had had. To this statement in his testimony must be added his further statement of the usual and ordinary service such articles afforded. In answer to the question of the value of these articles he said: "I don't just remember. I figured them up, somewheres in the neighborhood of one hundred sixty-five dollars." They were almost new. They had been driven around seven or eight thousand miles; it could have been as much as ten thousand miles. The tires cost when they were new about thirty dollars apiece. The usual mileage on such tires is about 150,000 miles. These were practically new tires. The rims cost when new five or six dollars apiece; the tubes around six dollars each.

The only purpose of proving value in this case was to distinguish between the two crimes, grand larceny and petty larceny, and if the evidence shows an actual or market value of more than $20 for all the articles proved to have been taken, the crime would be grand larceny. Appellant cites 36 C. J. 908 and 17 R. C. L. 66, both of which are very strong as to the necessity of competent evidence of the market value rather than estimated value or original cost and extent of use, which reason very strongly against the sufficiency of the evidence of the owner, King, when taken alone and not viewed in the light of various exceptions to and modifications of any such general rule. The very section in the first citation above, after stating the general rule, states that—

"Evidence of the price which the owner had paid for stolen property shortly before its theft, or which had been received for it or property of the same kind,

since the theft, or which accused had refused to take for it, is sufficient to sustain a verdict based on the value so determined." (p. 908.)

Besides, the evidence of the owner is not all the evidence here as to value. The witness Corder stated the defendant gave him $32 for these articles. In the case of *State v. Mall*, 112 Kan. 63, 209 Pac. 820, it was said:

"In one count of larceny, the evidence tended to show that the stolen article was worth more than $20, but the defendant was convicted of petit larceny therefor. *Held*, not error." (Syl. ¶ 6.)

The case of *State v. Bolton*, 111 Kan. 577, 207 Pac. 653, was one for the stealing of an Exide battery, found by the jury to be grand larceny, and, in the opinion, it was said on page 579:

"Complaint is made that the value of the property stolen was not sufficiently established. There was testimony and enough of it to show that the value of the battery taken exceeded $20, the amount essential to the offense of grand larceny. The market value of a new battery was shown to be $25 and the one in question had only been used for a few days. One witness did place a valuation of $18 upon it, but the testimony of another fixed it at $25 and the jury was warranted in finding that its value was more than $20."

We think the combined evidence of these two witnesses is more than sufficient to meet the requirement of a market value of more than $20.

The next error assigned is in the admission of evidence which concerns other property said to have been found in the possession of the defendant near and about the time of the commission of the offense charged in this case, and appellant, although he recognizes the rule as to the admission of evidence of the commission of other similar offenses to show motive, intent, habit, inclination, plans and system of operation, yet he strenuously insists that there was no evidence that any of the property was stolen or that the defendant knew it was stolen or as to how it came into the possession of the defendant. Appellant cites the case of *State v. Wheeler*, 89 Kan. 160, 130 Pac. 656, as to the danger of proving other distinct and unconnected offenses and the general danger of the jury's using some irrelevant matter derived from testimony of other transactions to solve the doubt because of former or other delinquencies, citing several other Kansas cases. There is always risk in any lawsuit of the jury, or even well-informed trial courts, along the lines of many such close questions, but the cases cited do not disallow the use of such closely related testimony because of the danger of its being misused by the jury, but positively permit it within certain

limited bounds and for restricted purposes. One of the cases cited by appellant, *State v. Ridgway*, 108 Kan. 734, 197 Pac. 199, contained such caution, but held notwithstanding such caution that—

". . . evidence relating to the subject of commission of other larcenies by the defendant was properly admitted at her trial on the charge of grand larceny." (Syl. ¶ 1.)

This was a case of a nurse found guilty of grand larceny where evidence was admitted showing goods were missing from at least four other homes where she had been employed and some of the missing articles were found in her possession.

Another case cited by the appellant as to necessary caution in the introduction of evidence of other offenses showing method, inclination, plan and system of operation is *State v. Mall*, supra, where it was held:

"The instructions properly limited the effect of testimony touching a large amount of goods seized in the defendant's room, other than the articles for the theft of which she was on trial. Such evidence was competent as tending to show that the goods for whose theft she was on trial were taken pursuant to a system of thieving pursued by the defendant." (Syl. ¶ 4.)

There is no complaint of the instruction in the case at bar in that particular. Space would not permit a detailed analysis of the testimony of each of the several witnesses whose testimony is mentioned by appellant as not being within the recognized rule as to such matters, but we may incidentally mention that several of the witnesses for the state, and especially Edwards, Kimmel and Critchlow, each had property stolen from them recently that was either found at defendant's place of business or at the police station, where the police officers testified they had taken such articles after finding them in defendant's possession. We think the evidence as to other property having been recently stolen and found in defendant's place of business was competent for the limited purpose above stated, and that purpose was properly defined and stated in the instructions given the jury on that subject.

The case of *State v. Frizzell*, 132 Kan. 261, 295 Pac. 658, is cited by appellant in favor of limiting the admission of evidence as to similar offenses to the well-recognized exceptions. One of the four mentioned is "similarity of system or plan." In that case there was no question raised as to there having been a bank robbery, but the identity of the parties was the only matter to be established.

Objection is made to the admission of an answer of witness King

which is claimed to have been hearsay evidence. It was that the rims taken from him were Firestone rims and later he said the man that sold them to him had told him they were that kind. Much of our common knowledge comes to us in this way and whether it is hearsay or not, strictly speaking, it cannot be prejudicial in this instance. (R. S. 62-1718, *State v. Thompson*, 23 Kan. 338; *State v. Baldwin*, 36 Kan. 1, 12 Pac. 318; *State v. Morton*, 59 Kan. 338, 52 Pac. 890; *State v. Coy*, 140 Kan. 284, 36 P. 2d 971; and *State v. Hooper*, 140 Kan. 481, 503, 37 P. 2d 52.)

The last error assigned is based upon the remarks and attitude of the district court throughout the trial. We have just held that there was no substantial error in the rulings of the trial court in the matter of the admission of evidence, and that the rule of our statute and decisions limits reversals on appeal to errors that affect the substantial rights of the defendant. The remarks and comment of the trial court on the evidence being offered and introduced, as set out in the brief and abstract of the appellant, are such as could not with propriety be made in the instructions of the court to the jury, and yet, as the appellant correctly states, these remarks were in the hearing of the jury and might possibly have had the same or similar effect on them and their weighing of the evidence as if made in writing a few hours later. While we cannot very well approve the making of so many remarks as to the nature, purpose and force of the evidence offered and introduced, yet there was at least a partial justification for it, and that was the making of frequent and almost constant objections to the introduction of evidence of other similar instances, notwithstanding the explanation of the court of the ruling and of the evidence being admitted for certain limited and restricted purposes, which the learned counsel for the appellant recognized in the making of one such objection. The court went further than usual in so repeatedly giving reasons for the admission of such evidence, but the making of such repeated remarks seems to have been invited and almost made necessary by the constant objections and arguments in support thereof.

The court also asked witnesses questions several times, which is not usual, but we are not of the opinion that the appellant was prejudiced thereby or by the remarks and comments made under the circumstances.

We find no error in the overruling of the motion for a new trial.

The judgment is affirmed.