## STATE v. WHITE.

No. 6752. Decided October 10, 1944. (152 P. 2d 80.)

See 23 C. J. S. Criminal Law, Sec. 1245; 45 Am. Jur. 399.

*E. LeRoy Shields,* of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and *Herbert F. Smart,* Deputy Atty. Gen., for respondent.

TURNER, Justice.

Appeal from a conviction of receiving stolen property. The defendant was charged in two counts with having received stolen property and grand larceny. At the conclusion of the State's case, the count charging grand larceny was dismissed on motion of the defendant for lack of evidence. The defendant took the stand in his own defense and the trial resulted in a verdict of guilty on the remaining count and the jury fixed the value of the property at $51, constituting the offense a felony.

Sometime during the early morning of June 1, 1943, the Tooele Drug Store at Tooele, Utah, then owned by a partnership of J. H. Watson and E. J. Elkington, was burlarized. A glass showcase was broken into and certain jewelry, consisting of rings and watches, was stolen. Marshall B. Maleska pleaded guilty to this offense and was produced as a witness for the State in the trial of the defendant and appellant White. He testified that he alone burglarized the store, but that he talked to defendant White about two weeks before committing the offense and White told him that he could dispose of some of the jewelry if Maleska would get it; that shortly after noon of June 1st, after the burglary, he exhibited the stolen property to White and the latter took a set of two small lady's diamond rings and a wrist watch, and that he, Maleska, in company with the defendant and another known only as Jack, went to Ogden where they tried unsuccessfully to sell the jewelry; that they then came to

Salt Lake City where they made further unsuccessful effort to sell it, and that he, Maleska, did not return to Tooele until after his arrest.

In his brief, appellant makes ten assignments of error. They may be summarized as follows: (1) Appellant contends that the two rings introduced in evidence were not sufficiently identified as property stolen from the Tooele Drug Store; (2) that the trial court erred in admitting testimony of J. H. Watson, one of the owners of the drug store, and Samuel A. Movitz, a wholesale jewelry salesman who sold the jewelry to the drug store, as to the value of the rings in evidence and that the court erred in refusing to grant defendant's motion to reduce the charge of receiving stolen property from a felony to a misdemeanor; (3) that the trial court erred in permitting the witness Johnny Kochever to testify with reference to a post card received through the mail at the Streamliner Club in Tooele where defendant White and Kochever were employed; (4) that the court erred in failing to instruct the jury to disregard any testimony introduced under the charge of grand larceny, and in permitting the district attorney to argue evidence in support of this charge after it was dismissed; and (5) that the court erred in denying defendant's motion for a new trial and in refusing to vacate and set aside the sentence imposed pursuant to the conviction and withdraw its order denying defendant's motion for a new trial and to grant a new trial on the ground of newly discovered evidence submitted after sentence and judgment in an affidavit of Maleska to the effect that his testimony against defendant White at the trial was false and was made under threats and promises of the sheriff's office at Tooele County.

(1) The rule relating to the identification of stolen property is stated in 17 R. C. L., Sec. 70, p. 65, as follows:

"The prosecution must identify stolen property found in the possession of the accused with that for the theft of which he is indicted, and this must be done by the most direct and positive testimony of which the case is susceptible."

The case of *State* v. *Handler,* 142 Kan. 455, 50 P. 2d 977, 979, involved the identification of certain automobile wheel rims. They were particularly identified because of spots of red paint on them, and one witness said that he might not be able to distinguish them from other rims of exactly the same kind, size and make. The court, in commenting on the evidence, said:

"Some of the cases cited by appellant were where the only evidence on the subject of identity was circumstantial. In the case at bar, the evidence was not circumstantial. The rule that such identifying testimony is required to be the most positive and direct of which the case is susceptible (17 R. C. L. 65) surely does not extend to the limit of an impossibility where two things look exactly alike. We think there was sufficient identification of the rims under the authorities above cited."

In the instant case, the witness Maleska, the confessed burglar, testified that he had a conversation with the defendant in the Streamliner Club about two weeks before he entered the store; that the conversation was had in the presence of Johnny Kochever, the defendant White and the owner of the Club. He stated: "Well, we got to talking about jewelry and wrist watches, and Tex [the defendant] was telling me about some of the jewelry over at the drug store, and he said if I got it he would know where to get rid of it in Ogden, so we went over after that—I don't remember how long after that—we went over to the drug store and looked at it * * *. There was a set of rings and wrist watches, and he said he would take that if I got them." That when he entered the drug store he took some rings that looked like the two rings introduced in evidence; that he showed the defendant what he had taken out and the defendant "took what he wanted * * *. A set of rings and a wrist watch"; that the rings were similar to those introduced in evidence.

The witness Watson, one of the owners of the drug store, testified in identifying the rings in evidence that "They are very similar to rings that we had in stock at the store

at the time of the robbery" and "similar to the rings that were missing." The witness Samuel A. Movitz testified that he was in the wholesale jewelry business; that he recognized the rings in evidence and that he had sold rings similar to them to the Tooele Drug during the fore part of 1943. In further identifying them, he said, "Well, we have a series of mountings that we make up. We sell quite a few of them, and the consequence is we know our rings when we see them" and that he recognized these as rings he had had mounted and sold.

The defendant White denied ever having received any jewelry from the witness Maleska, but testified with respect to the rings in evidence as follows: "I was tending bar in the Streamliner Club, and a guy came in there. I knew him just when I seen him. I sold him a lot of beer for six months at least, and he knew me very well, but I didn't know his name. So he told me, he says, ' "Tex," I am in a tough spot.' He says, 'Me and my wife is separated, and she give me these rings back.' He said, 'I have got to make a payment on my trailer house and I would like to sell these rings for $25.' I says, 'Well, I would like to help you, but I don't know what I would do with the rings.'. So finally I gave him $25 for the rings." He testified that the rings in evidence were the ones he bought and that he gave them to his girl friend, and that he gave the sheriff her name and address in Salt Lake where the rings were recovered. In answer to a question with reference to the general trend of a conversation the defendant had had with the sheriff, he testified: "When the sheriff picked me up on the second charge, he accused me of practically everything up to robbing Tooele Drug Store, and he asked me to plead guilty to robbing the Tooele Drug Store and throw myself on the mercy of the court and take my chance with the Parole Board; and I told him I would not plead guilty, that I didn't do it, didn't have anything to do with it, and I would not plead guilty to it, and if the rings I had bought from this guy was stolen I was guilty to that extent."

With the foregoing rule of evidence in mind and upon reviewing the above testimony, it is apparent that there was sufficient competent evidence to go to the jury on the question of identification of the stolen property.

(2) In 17 R. C. L., Sec. 71, pp. 66, 67, it is said:

"* * * *The market value of the article stolen, and not its original cost, is the true criterion when it is necessary to establish the value of the property in order to fix the grade of the offense. Thus in a prosecution for the larceny of gas evidence of the selling price to the consumer is the proper standard to be used in determining the grade of the offense where it has been a continuing one, and not the cost of manufacturing the gas * * *. In general the rule is that, before a witness will be allowed to give his opinion as to the value of property, a foundation must be laid showing him to be competent to form an opinion from a peculiar knowledge of the article and its value. *But when the owner of property is called as a witness to testify as to its value he may give his testimony after affirming that he is familiar with the value of such articles and had made inquiries as to the value of a similar article.* It is not necessary that the witness should be an expert to be qualified to testify to the market value, *but any one acquainted with the market value of property alleged to have been stolen is competent to testify regarding its value.*" (Italics added.)

See also *State* v. *Bolton,* 111 Kan. 577, 207 P. 653; *Lawson* v. *Southern Fire Ins. Co.,* 137 Kan. 591, 21 P. 2d 387, at page 392; *Brenneisen* v. *Phillips,* 142 Kan. 98, 45 P. 2d 867; and *State* v. *Handler,* supra.

The witness Watson, part owner of the drug store, testified over objection that the "Value of those rings was $70 * * * for the pair"; that from possibly August to the latter part of 1942 he had sold about three sets of these rings and each set sold for $70. Mr. Movitz, the wholesale jewelry salesman, testified that he was familiar with the retail selling prices of jewelry of the type he handled and, over objection, was permitted to testify that on June 1, 1943, the day of the burglary, the retail selling price of a pair of rings such as those in evidence was $65 to $70.

In *State* v. *Handler,* supra, it was said:

"The only purpose of proving value in this case was to distinguish between the two crimes, grand larceny and petty larceny, and if the evidence shows an actual or market value of more than $20 for all the articles proved to have been taken, the crime would be grand larceny. Appellant cites 36 C. J. 908, and 17 R. C. L. 66, both of which are very strong as to the necessity of competent evidence of the market value rather than estimated value or original cost and extent of use, which reason very strongly against the sufficiency of the evidence of the owner, King, when taken alone and not viewed in the light of various exceptions to and modifications of any such general rule. The very section in the first citation above, after stating the general rule, states that: 'Evidence of the price which the owner had paid for stolen property shortly before its theft, or which had been received for it or property of the same kind, since the theft, or which accused had refused to take for it, is sufficient to sustain a verdict based on the value so determined.' Page 908."

A review of the foregoing discloses there was sufficient competent evidence of the value of the stolen property to warrant the jury in finding the property to be of a value in excess of $50, and for that reason the trial court did not err in refusing defendant's motion to reduce the charge of receiving stolen property from a felony to a misdemeanor.

(3) Johnny Kochever, who was employed at the Streamliner Club in Tooele with the defendant White, was produced as a witness for the State. He testified that at the time of the trial he stood criminally charged with having received stolen property consisting of some of the ■ jewelry that came from the Tooele Drug Store. He stated that about a week or two after the drug store burglary he had a conversation with the defendant White at the Club about a post card which had been received addressed to the Streamliner Club, and that the defendant had showed the card to him first. Over objection and upon the assertion of the district attorney that he claimed for the testimony and admission on the part of the defendant, Kochever testified:

"Well, 'Tex [the defendant] asked me to borrow some money off of Pete [the owner of the Streamliner Club] to send to Maleska. The

card stated Maleska would turn us all in if we didn't send him some money to get out of town on; and I told 'Tex' that I wouldn't borrow no money because I borrowed too much already and got too much on my wages.

"Q. What did 'Tex' say about his sending any money, if anything? A. He said he couldn't get any either."

In connection with this phase of the testimony, defendant White testified that he and Johnny Kochever were working at the Streamliner Club when the post card was received that: "It wasn't addressed to anybody. It just said, 'Tell Jack and Johnny to sell those watches and send me $30. I need $30 pretty bad.' Signed, 'Johnny Peterson,' at the bottom." Further, on cross-examination, the defendant testified that the card was signed "Johnny Peterson, P. S., Curly"; that he knew from that that the card was from Maleska because the name "Curly" was the only name he had ever known Maleska by. He then denied that he knew the card referred to money for the jewelry taken from the Tooele Drug Store, and when asked if he talked to Kochever about it he answered, "I just showed it to him and asked him if he knew anything about it"; that he did not ask Kochever to borrow any money from Pete, and then flatly denied that he had had any conversation with Kochever concerning anything from the Tooele Drug Store, or that any conversation such as Kochever had testified to had occurred.

It was not error to admit this testimony and the least that could be claimed for it would be that it tended to show guilty knowledge on the part of the defendant that the property involved in this transaction was stolen. It was competent for the purpose of establishing an admission. *State* v. *Hymas*, 102 Utah 371, 131 P. 2d 791; *State* v. *Karumai*, 101 Utah 592, 126 P. 2d 1047.

(4) Under this heading appellant contends that the trial court erred in failing to instruct the jury to disregard

any and all testimony on behalf of the prosecution against
the defendant concerning the charge of grand larceny
after the court had granted the defendant's motion
to dismiss that charge for lack of evidence, and in
permitting the district attorney to argue to the jury evi-
dence adduced under this charge. We have before us no
record of the district attorney's remarks to the jury and
appellant furnishes none. The record does show at the
conclusion of the court's instructions, the following:

"Mr. Shields: I wonder if the jury shouldn't be advised that the
one count was dismissed?

"The Court: Oh, yes. The count for grand larceny I have taken
from you because I believed there wasn't sufficient evidence made
on that score that would stand at law to permit you to deliberate
on the question of larceny; and the only question left for you is the
question of receiving stolen property, knowing it to be stolen.
Do you have any other suggestions?

"Mr. Shields: None that I know of."

As we read the testimony, the only evidence which might
tend to support the charge of grand larceny is that given
by Maleska with respect to his conversation with defendant
in the Streamliner Club about two weeks prior to the theft
of the jewelry and that shortly after the conversation
Maleska and the defendant went to the drug store and
there looked at the jewelry in the glass show case. Maleska
directly testified that he was alone when he entered and
burglarized the store. There is no objection to the above
testimony under the charge of receiving stolen property.
It might well be considered by the jury in determining
whether the defendant had knowledge that the property
he was charged with having received was stolen.

(5) On April 19, 1944, defendant timely filed a motion
for a new trial. It is not definitely shown by the record
when this motion was denied by the court, but it may be
assumed that it was denied on April 29, 1944, just
prior to the court's pronouncement of sentence and
judgment. Notice of appeal to this court was filed
May 24, 1944, and on June 6th, following, defendant filed

a motion to vacate and set aside the sentence theretofore imposed, to withdraw the order denying the motion for a new trial and to enter an order granting a new trial to defendant on the ground of newly discovered evidence. This motion was supported by an affidavit of Maleska stating that his testimony against defendant White at the trial was false and made under threats and promises of the sheriff's office in Tooele County. An undated minute entry on the record shows that this motion was considered and denied by Judge Ray Van Cott Jr. The case was tried before Judge A. H. Ellett.

In view of 105-39-4, U. C. A. 1943, and on the authority of *State* v. *Cano,* 64 Utah 388, 231 P. 121, the second motion for a new trial was not timely made and the trial court was without jurisdiction to entertain it. It was therefore properly denied.

Finding no prejudicial error in the record, the judgment of the lower court is affirmed.

LARSON, McDONOUGH, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. As to the fifth ground relied on for reversal I am not prepared to say that there is not some means by which a new trial could be granted even after expiration of the time fixed by 105-39-4 U. C. A. 1943 if the newly discovered evidence, the reliability of which was subject to little if any doubt, was of such a nature that it would compel unquestionable conviction of the innocence of the defendant. Such is not this case.