219 So.2d 906

**Cecil HAUN**

v.

**STATE.**

**4 Div. 625.**

Court of Appeals of Alabama.

March 4, 1969.

Richard A. Thompson, Tuscaloosa, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

The appellant was convicted of the offense of grand larceny. His punishment was assessed at seven years in the penitentiary.

The indictment charged larceny of a "1962 Ford automobile, of the value of $800.00, the personal property of Dothan Rambler, Inc., a Corporation."

Mr. Charles Peake testified he was the President of Dothan Rambler Corporation, at Dothan, Alabama; that a 1962 Ford, two door, six cylinder sedan, light blue in color, motor number 2 U 15V 112015, was parked on his used car lot when he left his place of business March 8, 1966; that the car was locked and the keys were in the salesmen's office inside the showroom. The car was missing the next morning, March 9th, and the theft of the car was reported to the police. The keys were still inside the showroom. The car had a value of $900.00. He had never seen defendant around his place of business.

The principal witness for the state was one Steve Chappel. He testified he was fifteen when the offense was committed and sixteen years old at the time of trial. He first met defendant when he applied for a job as cook at the Sugar Shack, operated by defendant in Ozark, Alabama; that he worked for defendant several months, until April of 1966; that on March 9, 1966, he went to Dothan with one Terry Durden and Cecil Haun, the defendant. At the request and under the direction of defendant he and Durden stole a 1962 Ford, light blue, from the Dothan Rambler lot; that witness did the actual hot wiring on the car and Terry drove it off the lot. They drove the car to Centerville, Alabama, and parked it in the Auto wholesale lot and (defendant) Cecil brought them back to Ozark. Before he went to Dothan and got the car, defendant told him, "he would pay me $100.00 per car and he would follow me and show me the cars he wanted and he got Terry to help me. He told me he wanted a car to 1962 and up." The defendant promised to pay him $100.00 for the car, but paid him $75.-00 and held back $25.00 to post bond if he got caught; that he was caught and sent to the reform school.

This witness testified on cross examination they got the car early in the evening; that Cecil Haun did not take them to the Dothan Rambler place, but let them off on the street; that Cecil never touched the car, and so far as he knew he never saw it; that he worked for defendant in his restaurant at Ozark and defendant fired him. He figured defendant still owed him money, but he had nothing against him; that he had stolen eight automobiles and defendant told him about the cars before he stole them.

Carlton Young testified that in March and April of 1966 he worked at Auto Wholesale Company, operated by George Nichols in Brent, Alabama; that he saw a 1962, light blue Ford on the lot and, at the direction of George Nichols he put a switch in it; that he saw the defendant come by the car lot and had seen Steve Chappel at the lot one time, but he did not know whether Chappel brought an automobile to the lot.

James Fonderin, Chief of Police of Brent, Alabama, testified that about the middle of April, 1966, he was watching the Auto Wholesale lot, owned by George Nichols; that he saw a light blue 1962 Ford drive on the lot and then drive away; that he checked the tag number and got the registration on it and learned it had a switched tag; that Roy Cash was driving the car and witness went to Cash's house and arrested him for having a switched tag on the automobile; that he checked the "I. D." number on the car and it was stolen; that he reported it to the State Investigator, who was investigating another car theft.

On cross examination the witness said:

"It was checked out that it was stolen down here at Dothan. * * * They said it was stolen."

He saw the 1962 Ford drive on and off the lot the morning of 15th of April, 1966; that Cecil Haun lived in Brent ten or twelve years ago; that he never saw defendant in possession of the 1962 Ford, and never saw him around it.

Lieutenant Tom Posey, of the Alabama Department of Criminal Investigation, testified that in March or April of 1966 he was checking on cars that had been recovered by the Brent and Centerville Police Department; that he went to the Auto Wholesale in Brent and found a 1962, light blue Ford, stolen from Dothan; that he had the motor number in his notes, and that the number was *2U 51V 112015,* 1962, light Blue Ford, two door; mileage at that time was 42936." (It is not clear from the record whether the letter "V" is superimposed upon the number "4", or whether the "4" is superimposed upon the "V") The witness stated on cross examination he had never seen defendant in possession of the automobile, never saw him in Brent nor on the used car lot.

Glenn Miller testified he was employed by defendant March 15, 1966, and worked for him until about April 20th; that he was hired as bookkeeper but worked most of the time in the Sugar Shack restaurant; that in his capacity as bookkeeper he deposited checks and made out the deposits on them; that he prepared bills of sale for automobiles but never saw any of the automobiles; that defendant gave him the information as to the make, model, motor and serial numbers; that he did not know George Nichols but that the bills of sale were made out to Auto Sales, at Brent, Alabama; that some of the checks he deposited were signed by George Nichols and were endorsed by C. E. Haun.

This question was asked:

"I show you State's Exhibit A, marked for identification purposes and ask you what that is?"

The witness answered:

"It is a copy of a check that we had."

The check was made to "cash" and reads "Auto Wholesale, by George Nichols," and is drawn on the Brent Banking Company; that Mr. Haun endorsed the check and the witness Miller made out the deposit slip.

On cross examination the witness testified this was the only time he had seen the signature of George Nichols and he didn't know whether that was George Nichol's personal signature; that he saw Mr. Haun endorse the check; Haun signed his name and witness wrote "For Sugar Shack Restaurant, by Glenn Miller"; that the check was to be deposited for the Sugar Shack Restaurant; that he did not know of any connection between this check and a 1962 Ford, light blue, automobile, missing from Dothan in 1966, and did not know positively what the check was given for.

Helen Thomas testified she worked at the Bank of Ozark and was one of the custodians of the records of incoming checks and of records of persons having accounts in the bank; that Cecil Haun formerly had an account at the bank and that she had in her hand his ledger sheet. This question was asked:

"I show you State's Exhibit B marked for identification purposes and ask you what that is?"

The witness replied:

"This a collection sheet and when we are not sure about a check that has been deposited, we send it for collection. We do not pay out anything until we know they are cleared at the bank."

The dates of the collection sheet are March through April, 1966, and during that period a $900.00 check drawn on the bank of Brent was put in the bank and sent for collection. The check was "on Glenn Miller's endorsement." Glenn Miller is the bookkeeper. If the check had been paid it would have been collected for the Sugar Shack Restaurant. Mr. Cecil Haun signed the sheet.

On cross examination the witness testified the check was endorsed "C. E. Haun, by Glenn Miller, Sugar Shack Drive-in." The check never cleared. She did not know if that was George Nichol's signature on the check; that she did not recognize Glenn Miller's signature; that she would not recognize Mr. Haun's signature;

that she did not know Mr. Haun, and knew nothing about a missing 1962 Ford automobile from the Dothan Rambler place. The documents shown the witnesses Miller and Thomas and from which they testified, are referred to as State's Exhibits A and B, respectively. They are not shown to have been introduced in evidence or exhibited to the jury, and they do not appear in the record.

On redirect examination the witness testified that if the check had cleared the money from it would have been deposited to the account of the Sugar Shack Restaurant, and that C. E. Haun could draw the money from the Sugar Shack account; that the check was returned to Mr. Haun.

At the close of the State's testimony defense counsel made a motion to exclude the evidence on the ground that there was no corroboration of the testimony of the accomplice. The motion was overruled.

No evidence was presented by defendant.

The requested general affirmative charge was refused, and the motion for a new trial was denied.

Sec. 307, Title 15, Code 1940, reads:

"A conviction of felony cannot be had on the testimony of an accomplice, unless corroborated by other evidence tending to connect the defendant with the commission of the offense; and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."

 The well recognized rule is,

"The prosecution must identify stolen property found in the possession of the accused with that for the theft of which he is indicted, and this must be done by the most direct and positive testimony of which the case is susceptible."

32 Am.Jur., Sec. 122, p. 1033; State v. Handler, 142 Kan. 455, 50 P.2d 977; Nelson v. State, 29 Ala.App. 121, 192 So. 594;

Daw v. State, 42 Ala.App. 642, 176 So.2d 49.

The property involved here was not found in defendant's possession. The evidence that the automobile recovered in Brent, Alabama, was a "1962, light Blue Ford, two-door," bearing a different motor number from that testified to by Mr. Peake, the owner of the stolen car, is not, in our opinion, the direct and positive testimony required to identify this car as the stolen car.

Setting aside the testimony of the self-confessed accomplice, Chappel, under the rule announced in Sorrell v. State, 249 Ala. 292, 31 So.2d 82, it is clear the evidence tending to connect the defendant with the commission of the offense is not sufficient to corroborate the accomplice.

The judgment is reversed and the cause remanded.

Reversed and remanded.